**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 15, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

LARRY PAM,

     Defendant - Appellant.

No. 16-2171

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 1:16-CV-00358-LH-GBW &**
**1:11-CR-00882-LH-1)**
_____

Submitted on the briefs:[*]

Darrell M. Allen, Albuquerque, New Mexico, for Defendant-Appellant.

James D. Tierney, Acting United States Attorney, Las Cruces, New Mexico; C. Paige Messec, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **BRISCOE**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. INTRODUCTION

After pleading guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Larry Pam was sentenced to a fifteen-year term of imprisonment consistent with a plea agreement entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Mr. Pam's fifteen-year sentence exceeds the ten-year statutory maximum generally applicable to violations of § 922(g)(1). *See* 18 U.S.C. § 924(a)(2). But the district court accepted the Rule 11(c)(1)(C) plea agreement and imposed the agreed-upon sentence with the understanding that Mr. Pam is an armed career criminal under the Armed Career Criminal Act ("ACCA") and therefore is subject to a mandatory minimum sentence of fifteen years' imprisonment. *Id.* at § 924(e)(1).

Mr. Pam unsuccessfully challenged his conviction and sentence on direct appeal and collateral attack, but in light of the United States Supreme Court's decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016), we granted Mr. Pam authorization to file a second or successive motion for post-conviction relief under 28 U.S.C. § 2255. Accordingly, Mr. Pam filed a pro se § 2255 motion contending that his sentence had been unconstitutionally enhanced under the ACCA. The district court dismissed the motion, determining that the new constitutional rule announced in *Johnson* is inapplicable to Mr. Pam's sentence and, in the alternative, that the collateral attack waiver contained in Mr. Pam's plea agreement bars him from bringing the instant § 2255 motion.

Mr. Pam appealed the district court's decision and we granted him a Certificate of Appealability ("COA") as to whether (1) "the district court erred in holding that [Mr.] Pam was not entitled to relief under *Johnson*," and (2) "the district court erred in holding that [Mr.] Pam's claims were barred by the collateral attack waiver contained in his plea agreement." Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of Mr. Pam's § 2255 motion, but we do so on alternative grounds.[1]

## II.    BACKGROUND

In 2011, Mr. Pam was named in a single-count indictment for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The presentence investigation report ("PSR") calculated Mr. Pam's United States Sentencing Guidelines ("Guidelines") range of imprisonment as 188 to 235 months and indicated Mr. Pam was subject to a statutory minimum fifteen-year term of imprisonment because he qualified as an armed career criminal under the ACCA. To be an armed career criminal under the ACCA, the defendant must have "three previous convictions by any court . . . for a violent felony or a serious drug offense." *See* 18 U.S.C. § 924(e)(1). The PSR identified Mr. Pam's three ACCA predicate offenses as two convictions for shooting at or from a motor vehicle, in violation of New Mexico Statutes Annotated § 30-3-8(B), and a single conviction for aggravated

---

[1] "[W]e are 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'" *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir. 1988) (quoting *Alfaro Motors, Inc., v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987)).

assault with a deadly weapon, in violation of New Mexico Statutes Annotated

§ 30-3-2(A).

The district court held a plea hearing on September 20, 2011, during which

Mr. Pam pled guilty and entered into a plea agreement pursuant to Federal Rule of

Criminal Procedure 11(c)(1)(C).[2] In addition to containing Mr. Pam's admission of

guilt to being a felon in possession of a firearm and ammunition, the plea agreement

states that while this offense carries a maximum penalty of "imprisonment for a

period of not more than ten (10) years; . . . [Mr. Pam] may be an armed career

criminal which carries a minimum sentence of fifteen (15) years['] imprisonment." It

further reflects the parties' agreement that "a sentence of 180 months[']

imprisonment, or 15 years['] imprisonment, is the appropriate disposition for this

case." The plea agreement also includes a section entitled "Validity of Convictions,"

in which Mr. Pam stipulates that he has two prior felony convictions for shooting at

or from a motor vehicle, as well as a prior felony conviction for aggravated assault

with a deadly weapon. Finally, the plea agreement contains a collateral attack waiver,

which states:

> [T]he Defendant agrees to waive any collateral attack to the Defendant's
> conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of
> counsel's ineffective assistance in negotiating or entering this plea or
> this waiver.

[2] Federal Rule of Criminal Procedure 11(c)(1)(C) allows parties in a criminal case to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). If a district court accepts a Rule 11(c)(1)(C) plea agreement, the parties' agreed-to sentence or sentencing range "binds the court." *Id.*

4

At a sentencing hearing conducted four months later, the district court accepted the parties' Rule 11(c)(1)(C) plea agreement and sentenced Mr. Pam to the agreed-upon sentence of 180 months' imprisonment. The district court, in explaining its acceptance of the agreement, noted the PSR's "finding that [Mr. Pam] is an Armed Career Criminal" with "three convictions for violent felonies."

After unsuccessfully seeking post-conviction relief through an initial § 2255 motion, challenging his conviction and sentence on direct appeal, and pursuing other avenues not relevant to this appeal, Mr. Pam requested authorization to file a second or successive § 2255 motion. His request was based on the Supreme Court's decision in *Johnson*, which struck down the portion of the ACCA's definition of "violent felony" known as the residual clause. 135 S. Ct. at 2557. We granted Mr. Pam's request and, shortly after his second or successive § 2255 motion was filed with the United States District Court for the District of New Mexico, the district court appointed counsel to represent Mr. Pam. Despite being represented by counsel, Mr. Pam subsequently filed a pro se amended § 2255 motion, which in large measure repeated the claims and arguments presented in the first motion we authorized him to file.

The district court issued a single order dismissing both motions, reasoning that Mr. Pam is not entitled to post-conviction relief because (1) *Johnson* is inapplicable to Mr. Pam's sentence, which was imposed pursuant to a Rule 11(c)(1)(C) plea agreement and not under the provisions of the ACCA and (2) Mr. Pam's collateral

5

attack waiver is enforceable and bars him from bringing a § 2255 motion based on *Johnson*. Through counsel, Mr. Pam filed a motion requesting the district court to vacate its dismissal of his § 2255 motion. Mr. Pam then filed a notice of appeal. Because Mr. Pam's motion to vacate remained pending before the district court, we held his appeal in abeyance until the district court issued an order denying the motion.[3] Mr. Pam subsequently requested but was denied a COA from the district court to challenge the dismissal of his § 2255 motion. Mr. Pam then petitioned this court, and we granted him a COA on two issues: "(1) whether the district court erred in holding that [Mr.] Pam was not entitled to relief under *Johnson*; and (2) whether the district court erred in holding that [Mr.] Pam's claims were barred by the collateral attack waiver contained in his plea agreement."

## III.    DISCUSSION

"In reviewing denial of a § 2255 motion for post-conviction relief where a COA has been granted, 'we review the district court's findings of fact for clear error and its conclusions of law de novo.'" *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (quoting *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011)). "But where, as here, the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law upon an uncontested trial record, our review is strictly de novo." *Rushin*, 642 F.3d at 1302.

---

[3] Mr. Pam did not file an amended notice of appeal incorporating the district court's denial of his motion to vacate. As a result, we lack jurisdiction to consider the district court's denial of that motion. *See Breeden v. ABF Freight Sys., Inc.*, 115 F.3d 749, 752 (10th Cir. 1997); Fed. R. App. P. 4(a)(4)(B)(ii).

6

In examining Mr. Pam's appeal of the district court's decision, we first address the threshold issue of whether Mr. Pam may bring a *Johnson*-based challenge to an agreed-upon sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement. We conclude Mr. Pam may bring such a challenge because his plea agreement expressly references the ACCA as the basis for his term of imprisonment. Next, we consider whether the collateral attack waiver contained in Mr. Pam's plea agreement bars him from challenging his sentence under § 2255. Determining that it does not, we then examine whether Mr. Pam's felony convictions for shooting at or from a motor vehicle, in violation of New Mexico Statutes Annotated § 30-3-8(B), constitute violent felonies under the ACCA after *Johnson*. Resolving this final issue in favor of the government, we conclude the district court was correct in dismissing Mr. Pam's § 2255 motion.

## A. Rule 11(c)(1)(C) and *Johnson*

Before the district court, Mr. Pam argued that his 180-month sentence is unconstitutional because his prior convictions for shooting at or from a motor vehicle, in violation of New Mexico Statutes Annotated § 30-3-8(B), as well as his conviction for aggravated assault with a deadly weapon, in violation of New Mexico Statutes Annotated § 30-3-2(A), no longer constitute violent felonies under the ACCA after *Johnson*. The district court did not reach the merits of Mr. Pam's arguments, but found he was not entitled to post-conviction relief because (1) his claim for relief from a Rule 11(c)(1)(C) plea agreement does not implicate *Johnson*

7

and (2) the waiver provision in his plea agreement bars him from raising a *Johnson*-related collateral attack to his sentence.

In reaching its determination that Mr. Pam's § 2255 motion does not implicate *Johnson*, the district court reasoned that because Mr. Pam "was not sentenced under the provisions of the ACCA, but was instead sentenced to a stipulated and agreed[-upon] term of 180 months under" a Rule 11(c)(1)(C) plea agreement, "*Johnson* is inapplicable to [his] sentence." The district court acknowledged Justice Sotomayor's controlling concurrence in *Freeman v. United States*, which outlines two situations in which a Rule 11(c)(1)(C) plea agreement is "based on" a Guidelines sentencing range for purposes of post-conviction sentence reductions under 18 U.S.C. § 3582(c)(2). 564 U.S. 522, 534–544 (2011) (Sotomayor, J., concurring) (holding a term of imprisonment resulting from a Rule 11(c)(1)(C) plea agreement is "based on" the Guidelines for purposes of § 3582(c)(2) when the agreement (1) "call[s] for the defendant to be sentenced within a particular Guidelines sentencing range," or (2) "provide[s] for a specific term of imprisonment . . . but also make[s] clear that the basis for the specified term is a Guidelines sentencing range" and "that sentencing range is evident from the agreement itself"); *see also United States v. Graham*, 704 F.3d 1275, 1277–78 (10th Cir. 2013) (concluding Justice Sotomayor's concurrence in *Freeman* is controlling). But the district court concluded the application of *Freeman* would not change the result here because Mr. Pam's "agreement did not use or employ a Guideline[s] sentencing range."

8

Reviewing the district court's determination de novo, *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015), we hold the district court erred in finding that Mr. Pam's sentence was not imposed under the ACCA and therefore the court also erred in concluding that *Johnson* could not be applicable to Mr. Pam's sentence. Although we agree that Mr. Pam's plea agreement does not implicate the Guidelines and that he is proceeding under § 2255, rather than § 3582(c)(2), we nevertheless consider *Freeman*'s analysis instructive in resolving whether Mr. Pam's plea was based on the enhanced sentence available for an armed career criminal under the ACCA. While, "[i]n the [Rule 11(c)(1)(C)] agreement context, . . . it is the binding plea agreement that is the foundation for the term of imprisonment to which the defendant is sentenced," Mr. Pam's plea agreement expressly used the ACCA— specifically its statutorily mandated minimum term of imprisonment—to establish the agreed-upon 180-month sentence. *Freeman*, 564 U.S. at 535 (Sotomayor, J., concurring). Notably, Mr. Pam's plea agreement states that while his crime of conviction carries a maximum penalty of "imprisonment for a period of not more than ten (10) years," he "may be an armed career criminal which carries a minimum sentence of fifteen (15) years['] imprisonment." The agreement also includes a section entitled "Validity of Convictions," in which Mr. Pam stipulates to the validity of three of his prior felony convictions—the same three convictions the PSR identifies as ACCA predicate offenses. Finally, the plea agreement sets forth an agreed-upon sentence of 180 months, which exceeds the statutory maximum

9

applicable to violations of 18 U.S.C. §§ 922(g)(1), as set forth in 18 U.S.C.

§ 924(a)(2), unless the ACCA applies.[4]

Because Mr. Pam's plea agreement expressly used the ACCA to establish the
agreed-upon term of imprisonment, the binding nature of the agreement does not
prevent us from considering whether *Johnson* impacts the constitutionality of
Mr. Pam's sentence.[5] *Cf. Freeman*, 564 U.S. at 534 (Sotomayor, J., concurring)

---

[4] In addition, the district court's acceptance of the plea agreement was clearly predicated on its understanding that Mr. Pam was subject to the ACCA. In explaining its acceptance of the plea agreement and imposition of the agreed-upon 180-month sentence, the district court expressly noted the PSR's "finding that [Mr. Pam] is an Armed Career Criminal" with "three convictions for violent felonies."

[5] A number of district courts have reached a similar conclusion, although their reasoning differs. *See, e.g.*, *United States v. Wolf*, No. 1:04-CR-347-1, 2017 WL 736809, at *4–7 (M.D. Pa. Feb. 24, 2017) (unpublished) (holding the rationale in *Freeman* is not applicable in the § 2255 context, but nevertheless concluding that a "Rule 11(c)(1)(C) plea agreement . . . does not preclude Defendant's entitlement to § 2255 relief based on *Johnson*'s application to the ACCA's residual clause"); *id.* at *5, 5 n.3 (collecting district court cases granting "§ 2255 relief to defendants who entered into Rule 11(c)(1)(C) plea agreements but received now-unconstitutional sentences in light of *Johnson*"); *United States v. Beck*, No. 8:13CR62, 2016 WL 3676191, at *5 (D. Neb. July 6, 2016) (unpublished) (noting a "binding plea agreement does not prevent the court's consideration of the impact of the *Johnson* decision on the defendant's sentence"); *United States v. Cloud*, 197 F. Supp. 3d 1263, 1270–71 (E.D. Wash. 2016) (holding "[i]f a defendant can receive the benefit of a retroactive Sentencing Guidelines amendment following an 11(c)(1)(C) plea agreement, the Court can find no reason not to apply a similar rationale to *Johnson* claims on collateral review"); *Cutshaw v. United States*, Nos. 2:09-CR-70-RLJ-MCLC-1, 2:16-CV-106-RLJ, 2016 WL 3212269, at *2 n.2 (E.D. Tenn. June 7, 2016) (unpublished) (noting that as a "consequence of *Johnson* . . . prisoners improperly subjected to [the ACCA's] mandatory statutory minimum are uniformly left with sentences, stipulated or not, exceeding the congressionally authorized maximum punishment sanctioned for non-ACCA violations of § 922(g)(1)," and challenges to such sentences "are quintessentially within the scope of [§ 2255] because they challenge a sentence 'imposed in violation of the Constitution'" (quoting 28 U.S.C. § 2255(a))).

10

(holding that while a term of imprisonment imposed pursuant to a Rule 11(c)(1)(C) agreement is "'based on' the agreement itself, . . . if a [Rule 11(c)(1)(C)] agreement expressly uses a Guidelines sentencing range . . . to establish the term of imprisonment, . . . the term of imprisonment is 'based on' the range employed" and not the Rule 11(c)(1)(C) agreement itself). Indeed the government concedes this point, stating it "does not contend that [Mr.] Pam is barred from seeking relief under *Johnson* on the grounds that his sentence was based on his plea agreement, rather than on the ACCA," and that "it is clear that his sentence was based at least in part on the ACCA because it was the ACCA that raised his statutory sentencing range above the 120-month maximum otherwise applicable."[6] *See also Welch*, 136 S. Ct. at 1261 ("Because the ordinary maximum sentence for a felon in possession of a firearm is 10 years, while the minimum sentence under the Armed Career Criminal Act is 15 years, a person sentenced under the [ACCA] will receive a prison term at least five years

---

[6] Although the government acknowledges that Mr. Pam is not barred from seeking relief under *Johnson* on the basis that his sentence was imposed pursuant to a Rule 11(c)(1)(C) plea agreement, it contends we may affirm the district court's decision on the alternative ground that Mr. Pam failed to establish that his § 2255 motion relies on the new rule of constitutional law announced in *Johnson*. *See* 28 U.S.C. § 2244(b)(2)(A). Specifically, the government argues that where, as here, the record is silent or inconclusive as to which clause of the ACCA's "violent felony" definition the sentencing court relied on to enhance a petitioner's sentence, a § 2255 petitioner cannot carry his burden of showing the existence of a *Johnson*-related error and therefore cannot prevail under § 2255. But because we ultimately conclude that Mr. Pam has three qualifying convictions for violent felonies under the ACCA, making his 180-month sentence lawful and providing an alternative basis for affirming the district court's dismissal of Mr. Pam's § 2255 motion, we need not resolve this additional alternative argument.

11

longer than the law otherwise would allow.") In sum, Mr. Pam's sentence was based on the ACCA.

## B. Collateral Attack Waiver

In addition to holding that *Johnson* is inapplicable to Mr. Pam's § 2255 motion based on his agreed-to sentence, the district court determined that the collateral attack waiver contained in his plea agreement bars him from bringing the instant § 2255 motion. The district court concluded that the waiver is enforceable and bars Mr. Pam's § 2255 motion because (1) Mr. Pam's request for relief under *Johnson* falls within the scope of the waiver, (2) Mr. Pam knowingly and voluntarily agreed to the waiver, and (3) enforcement of the waiver would not result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (establishing a three-part test to determine whether an appeal waiver is enforceable); *see also United States v. Viera*, 674 F.3d 1214, 1217–18 (10th Cir. 2012) (applying the *Hahn* analysis to a collateral attack proceeding). Mr. Pam challenges the district court's decision, arguing the collateral attack waiver is unenforceable because his § 2255 motion does not fall within the scope of the waiver and, alternatively, that enforcement of the waiver would result in a miscarriage of justice.[7] In addition, Mr. Pam argues that he could not have waived his right to bring

---

[7] Although Mr. Pam challenges the scope of the waiver in the plea agreement, he provides no reasoned analysis or citation to relevant authority in support. Notwithstanding that inadequate briefing, we exercise our discretion to examine the plain language of the waiver to determine whether Mr. Pam's *Johnson* claim falls within its scope. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th

12

a *Johnson*-related § 2255 motion because at the time he entered the plea agreement that right did not yet exist.[8]

Whether the collateral attack waiver contained in Mr. Pam's plea agreement is enforceable is a question of law that we review de novo. *United States v. Leyva-Matos*, 618 F.3d 1213, 1216 (10th Cir. 2010); *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). Although "a waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made," such waivers are subject to the "same exceptions [that exist for] waiver[s] of the right to appeal." *Cockerham*, 237 F.3d at 1183. As a result, where, as here, a petitioner raises a collateral attack to his conviction or sentence despite having waived his right to do so in a plea agreement, we must determine whether the waiver is enforceable by examining "(1) whether the disputed [collateral attack] falls within the scope of the waiver of [collateral attack] rights[,] (2) whether the defendant knowingly and voluntarily waived his [collateral attack] rights[,] and (3) whether enforcing the waiver would result in a miscarriage of justice." *Hahn*, 359 F.3d at

---

Cir. 2005) (indicating that the appellate court retains discretion to proceed to the merits of an appeal despite inadequate briefing).

[8] In his reply brief, Mr. Pam also appears to argue that the collateral attack waiver contained in his plea agreement does not bar his § 2255 motion because it raises "an error of constitutional dimension." This argument is waived because Mr. Pam did not present it in his opening brief. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

13

1325; *see also Viera*, 674 F.3d at 1216; *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

We first consider Mr. Pam's argument that his § 2255 motion does not fall within the scope of the collateral attack waiver contained in his plea agreement. In determining the scope of waiver, we apply principles of contract law and examine the plain language of the plea agreement. *United States v. Taylor*, 413 F.3d 1146, 1151 (10th Cir. 2005). But we strictly construe the scope of the waiver and interpret any ambiguities against the government and in favor of Mr. Pam's collateral attack rights. *United States v. Novosel*, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007); *Taylor*, 413 F.3d at 1151–52.

Here, we need only examine the plain language of Mr. Pam's collateral attack waiver to conclude that it does not bar him from requesting relief from his *sentence* under *Johnson*. In its entirety, Mr. Pam's collateral attack waiver provides, with our emphasis:

> In addition, the Defendant agrees to waive any collateral attack to the Defendant's *conviction(s)* pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

The district court determined this language prohibits Mr. Pam from bringing the instant § 2255 motion because it bars "any collateral attack" under § 2255 that is unrelated to a claim of ineffective assistance of counsel, and Mr. Pam's motion does not suggest his claim is based on ineffective assistance of counsel. But in relying on the waiver's broad language barring nearly "any collateral attack" under § 2255, the

14

district court overlooked an important limitation to the scope of the waiver. Although the waiver states Mr. Pam "waive[s] any collateral attack to [his] *conviction(s)* pursuant to 28 U.S.C. § 2255" (emphasis added), it does not limit or waive Mr. Pam's rights to bring a collateral attack challenging his *sentence*. And as is evident from Mr. Pam's § 2255 motion, he does not challenge the validity of his conviction. Instead, he challenges the constitutionality of his sentence after *Johnson*. As a result, Mr. Pam's § 2255 motion falls outside the scope of the collateral attack waiver contained in his plea agreement. The waiver therefore cannot act as a bar to his request for post-conviction relief under *Johnson*,[9] and the district court erred in dismissing Mr. Pam's § 2255 motion on the basis of that waiver.[10]

---

[9] Because Mr. Pam's § 2255 motion does not fall within the scope of the collateral attack waiver contained in the plea agreement, we need not address whether the waiver was made knowingly and voluntarily, or whether enforcement of the waiver would constitute a miscarriage of justice. Similarly, we need not address Mr. Pam's contention that he could not waive a right that did not yet exist. *See People for Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("If it is not necessary to decide more, it is necessary not to decide more." (alteration omitted) (quoting *PDK Labs, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))).

[10] The government contends that even if we determine Mr. Pam's § 2255 motion does not fall within the scope of the collateral attack waiver contained in his plea agreement, "[h]is affirmative agreement to an ACCA sentence is another ground on which to find that [he] has waived his current challenge." The government argues that defendants, like Mr. Pam, may waive their ability to raise certain arguments on appeal by requesting or accepting a certain result before the district court and later challenging that result on appeal. But the single case the government relies on to support this contention arises from a drastically different procedural and legal context than that presented here. In *United States v. Carrasco-Salazar*, the defendant initially disputed a sixteen-level Guidelines enhancement included in his PSR, but subsequently indicated to the district court during a sentencing hearing that the

15

## C. New Mexico Statutes Annotated § 30-3-8(B)

As an alternative ground for affirming the district court's dismissal of Mr. Pam's § 2255 motion, the government contends Mr. Pam was properly sentenced as an armed career criminal because his three prior convictions under New Mexico law constitute violent felonies under the non-residual clauses of the ACCA. On appeal, Mr. Pam does not contest that his conviction for aggravated assault with a deadly weapon is a qualifying felony under the ACCA. Rather, he argues that his two convictions for shooting at or from a motor vehicle, in violation of New Mexico Statutes Annotated § 30-3-8(B), do not qualify as violent felonies under the ACCA after *Johnson*. To place these arguments in context, we pause to examine the ACCA and the Supreme Court's decision in *Johnson*.

---

objection had been resolved. 494 F.3d 1270, 1272–73 (10th Cir. 2007). When the defendant attempted to challenge the sixteen-level Guidelines enhancement on direct appeal, we concluded the defendant had waived this argument by abandoning his objection before the district court. *Id.* We also noted the well-established principle that an appellant may be barred from appealing an invited error. *Id.* at 1272.

Here, the government presents no argument or explanation supporting a conclusion that Mr. Pam invited the sentencing court to commit a *Johnson* error, or that Mr. Pam raised and abandoned a *Johnson*-based objection years before the Supreme Court issued its decision in *Johnson*. And while some of our sister circuits have applied waiver principles similar to those identified in *Carrasco-Salazar* to conclude a defendant waived an argument that his sentence had been unlawfully enhanced under the ACCA, they did so in the context of direct appeals and not § 2255 motions, and before *Johnson* changed the landscape of the ACCA. *See, e.g.*, *United States v. Lowe*, 512 F. App'x 628, 629, 630–31 (7th Cir. 2013) (unpublished); *United States v. Dickerson*, 457 F. App'x 232, 232–33 (4th Cir. 2011) (unpublished) (per curiam); *United States v. Hall*, 373 F. App'x 588, 589, 591–93 (6th Cir. 2010) (unpublished). In any event, the government's inadequate briefing combined with our resolution of this appeal on other grounds means we need not resolve today how principles such as preclusion, waiver, or invited error might affect claims based on *Johnson*. *See People for Ethical Treatment of Prop. Owners*, 852 F.3d at 1008.

16

The ACCA provides an enhanced sentence for being a felon in possession of a firearm if the defendant has three previous convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924(e)(1). The ACCA definition of a violent felony establishes three distinct ways in which prior convictions may qualify as predicate offenses, which are often referred to as the "elements clause," the "enumerated-offenses clause," and the "residual clause." The definition states:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, . . . that—
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the Elements Clause]; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives [the Enumerated-Offenses Clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the Residual Clause] . . . .

18 U.S.C. § 924(e)(2)(B); s*ee also United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir. 2017).

In *Johnson*, the Supreme Court struck down the residual clause of the ACCA as unconstitutionally vague, 135 S. Ct. at 2563, and in *Welch v. United States*, the Court ruled that *Johnson* could be applied retroactively to cases on collateral review, 136 S. Ct. 1257, 1265 (2016). But in *Johnson,* the Supreme Court expressly stated that its decision "does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2563. This is significant for our purposes because relief under *Johnson* is only available if Mr. Pam's enhanced sentence is supported, at least in

17

part, by the now-unconstitutional residual clause of the ACCA. If instead at least three of Mr. Pam's prior convictions satisfy the elements clause, the enumerated-offenses clause, or are serious drug offenses, it follows that, in any event, he is not entitled to relief under *Johnson*.

To resolve this issue, we first conclude that § 30-3-8(B) is a divisible statute. We then address whether Mr. Pam's convictions for shooting at or from a motor vehicle, whether resulting in no injury or great bodily harm, are violent felonies under the ACCA. Because it is undisputed that Mr. Pam's crimes of conviction do not fall within the enumerated offenses listed in the ACCA and are not serious drug offenses, he is only subject to the ACCA's fifteen-year minimum sentence if those convictions have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Whether Mr. Pam's convictions under § 30-3-8(B) satisfy this definition is a close question, but we ultimately conclude that they do. Mr. Pam thus qualifies as an armed career criminal under the ACCA, thereby making his 180-month sentence lawful.

To determine whether the elements of a crime of conviction satisfy the elements clause, we apply the categorical approach. In doing so, we "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). "We must presume that the conviction[s] rested upon nothing more than the least of the acts criminalized" by the statute, *Moncrieffe v. Holder*, 133 S. Ct. 1678,

18

1684 (2013) (alternations and internal quotation marks omitted), but "such conduct only includes that in which there is a 'realistic probability, not a theoretical possibility' [that] the state statute would apply," *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017); *see also United States v. Titties*, 852 F.3d 1257, 1274 (10th Cir. 2017) (noting courts "must 'focus on the minimum conduct criminalized by the state statute' without applying 'legal imagination' to consider hypothetical situations that technically violate the law but have no 'realistic probability' of falling within its application" (quoting *Moncrieffe*, 133 S. Ct. at 1684–85)). "'If the statute sweeps more broadly' than the ACCA definition—that is, if some conduct would garner a conviction but would not satisfy the [elements clause] definition—then any 'conviction under that law cannot count as an ACCA predicate.'" *Titties*, 852 F.3d at 1266 (alteration omitted) (quoting *Descamps*, 133 S. Ct. at 2283).

However, in a narrow range of cases where the statute of conviction is a divisible statute because it "sets out one or more elements of the offense in the alternative," *Descamps*, 133 S. Ct. at 2281, we must first employ the modified categorical approach to determine "the relevant elements for . . . comparison under the categorical approach," *Titties*, 852 F.3d at 1265; *see also Descamps*, 133 S. Ct. at 2285 (noting "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute"). The modified categorical approach allows courts to "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative elements formed the basis of the prior conviction." *Titties*, 852 F.3d at

19

1266; *see also Mathis*, 136 S. Ct. at 2249 (holding the modified categorical approach permits courts to look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of"). Once the relevant elements of the statute of conviction have been identified through use of the modified categorical approach, "courts 'can then do what the categorical approach demands' and compare those elements to the ACCA definition" of violent felony. *Titties*, 852 F.3d at 1266 (quoting *Descamps*, 133 S. Ct. at 2281).

Because the modified categorical approach "'has no role to play' when the statute of conviction is indivisible," a court must make the threshold determination that a statute is divisible before applying the modified categorical approach. *Titties*, 852 F.3d at 1267 (quoting *Descamps*, 133 S. Ct. at 2285). A divisible statute is one that "sets out one or more elements of the offense in the alternative," *Descamps*, 133 S. Ct. at 2281, and "thereby define[s] multiple crimes," *Mathis*, 136 S. Ct. at 2249. To be considered divisible, "the statutory phrases listed in the alternative must be elements, not means." *Titties*, 852 F.3d at 1267. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). "By contrast, means are 'various factual ways of committing some component of the offense.'" *Titties*, 852 F.3d at 1267 (quoting *Mathis*, 136 S. Ct. at 2249).

20

The Supreme Court has identified several tools courts may employ to assist in determining whether an alternatively phrased statute sets forth elements of the crime of conviction or means for committing some component of the offense. *See Titties*, 852 F.3d at 1267–68. First, the language of the statute itself may resolve the issue. "If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] they must be elements. Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Mathis*, 136 S. Ct. at 2256 (citations omitted). Second, a state court decision may definitively answer the question. When a state supreme court rules that a statute lists alternative means as opposed to alternative elements for committing an offense, "a sentencing judge need only follow what [the ruling] says." *Id.* Finally, "if state law fails to provide clear answers," courts may look to "the record of a prior conviction itself." *Id.* "For instance, if an indictment or the jury instruction includes the statute's alternative terms, '[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element.'" *Titties*, 852 F.3d at 1268 (alteration in original) (quoting *Mathis*, 136 S. Ct. at 2257). "Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Mathis*, 136 S. Ct. at 2257.

Here, Mr. Pam argues § 30-3-8(B) sets forth a single, indivisible set of elements. Section 30-3-8(B) provides:

> Shooting at or from a motor vehicle consists of willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another. Whoever commits shooting at or from a motor vehicle that does not result in great bodily harm to another person is guilty of a fourth degree felony. Whoever commits shooting at or from a motor vehicle that results in injury to another person is guilty of a third degree felony. Whoever commits shooting at or from a motor vehicle that results in great bodily harm to another person is guilty of a second degree felony.

N.M. Stat. Ann. § 30-3-8(B). Employing the tools identified by the Supreme Court, we conclude § 30-3-8(B) is divisible because it lists alternative elements that create three separate crimes.

First, on its face, § 30-3-8(B) describes three alternative crimes that carry varying punishments based on the existence and degree of a resulting injury to another person. Because the statutory alternatives carry different punishments, they must be elements. *Mathis*, 136 S. Ct. at 2256.

Second, while we are not aware of any New Mexico caselaw definitively resolving this issue, the New Mexico Uniform Jury Instructions, which are mandatory and presumptively correct when adopted by the New Mexico Supreme Court, *United States v. Maldonado-Palma*, 839 F.3d 1244, 1249 (10th Cir. 2016), provide additional support for the conclusion that § 30-3-8(B) is divisible.[11] In setting out the "essential elements" for violations of § 30-3-8(B), the New Mexico Uniform Jury Instructions include three separate and distinct instructions depending on

---

[11] "In cases . . . where the defendant pled guilty and no jury instructions were given, the state's uniform jury instructions can provide insight into the means/elements question." *United States v. Titties*, 852 F.3d 1257, 1270 n.15 (10th Cir. 2017).

whether the violation resulted in no injury, injury, or great bodily harm. *See* N.M.

U.J.I. 14-342; *id.* at 14-343; *id.* at 14-344. For example, the instructions indicate that

to establish a violation of § 30-3-8(B) where there was no injury, the state must

"prove . . . beyond a reasonable doubt each of the following elements of the crime:"

1. "The defendant willfully shot a firearm [at] [from] a motor vehicle with reckless disregard for another person;"[12] and

2. "This happened in New Mexico on or about the ___ day of _____, ____."[13]

N.M. U.J.I. 14-342. But to prove a violation of § 30-3-8(B) that resulted in injury to

another, the state must prove the additional element that: "The defendant caused

injury to _____ (*name of victim*)." *Id.* at 14-343. Similarly, for violations of the

statute that resulted in great bodily harm, the state must prove that: "The shooting

caused great bodily harm to _____ (*name of victim*)." *Id.* at 14-344.

Third, the charging instruments in Mr. Pam's two § 30-3-8(B) convictions also

suggest the statute is divisible.[14] In August 1997, Mr. Pam was charged, in part, as

follows:

---

[12] Neither party addresses whether § 30-3-8(B) is further divisible on the basis of the alternative phrases "at" a motor vehicle or "from" a motor vehicle. We decline to reach this issue because the parties' arguments do not rely on this distinction and resolution of the case does not require it. *See Titties*, 852 F.3d at 1270 n.14.

[13] The three relevant jury instructions include an optional element that "may be given if there is an issue as to whether or not the defendant was a law enforcement officer engaged in the lawful [performance] of duty." N.M. U.J.I. 14-342; *id.* at 14-343; *id.* at 14-344. We omit this element because there is no indication Mr. Pam was a law enforcement officer at the time of his convictions.

[14] This examination of the charging documents is different from the modified categorical approach. "Unlike the modified categorical approach, which courts use to

Count 4: Shooting at or from a motor vehicle (great bodily harm).

That, on or about the 23rd day of June, 1996, in Bernalillo County, New Mexico, the defendant did willfully discharge a firearm at a motor vehicle with reckless disregard for the safety of another, causing great bodily harm to Augusto Rodriquez Perez, contrary to Section 30-3-8, NMSA 1978.

By contrast, the indictment filed against Mr. Pam in September 1997 charged as follows:

Count 1: Shooting at or from a motor vehicle (no injury).

That, on or about the 4th day of August, 1997, in Bernalillo County, New Mexico, the defendant did willfully discharge a firearm from a motor vehicle with reckless disregard for the safety of another, contrary to section 30-3-8, NMSA 1978.

Based on our analysis of the text, the New Mexico Uniform Jury Instructions, and the record evidence it is apparent that § 30-3-8(B) establishes three alternative crimes based on the degree of injury to another person, if any, resulting from a defendant's willful discharge of a firearm at or from a motor vehicle.

Because § 30-3-8(B) is divisible, we may examine documents other than the statute itself to determine the specific offenses and accompanying elements that underlie Mr. Pam's § 30-3-8(B) convictions. *Mathis*, 136 S. Ct. at 2249. As is evident from the foregoing analysis, the charging instruments indicate Mr. Pam was first

---

identify the particular elements in a divisible statute that underlie a defendant's conviction, this look at the record addresses a threshold issue: whether the statute is divisible." *Titties*, 852 F.3d at 1268 n.10. This examination "is for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (alterations and internal quotation marks omitted). "Only if the answer is yes can the court make further use of the materials" when applying the modified categorical approach. *Id.* at 2257.

charged with and later convicted of violating § 30-3-8(B) for discharging a firearm at a motor vehicle resulting in great bodily harm, a second degree felony. Shortly thereafter, Mr. Pam was convicted of violating § 30-3-8(B) for discharging a firearm from a motor vehicle that did not result in injury, a fourth degree felony. Although Mr. Pam's § 30-3-8(B) convictions are distinct, in that one includes the element of great bodily harm to another while the other does not, we analyze the offenses simultaneously as that distinction does not inform or alter our analysis.

Having identified the relevant crimes of conviction and their associated elements through use of the modified categorical approach, we may "'do what the categorical approach demands' and compare those elements to the ACCA definition" of a violent felony. *Titties*, 852 F.3d at 1266 (quoting *Descamps*, 133 S. Ct. at 2281). Accordingly, we examine whether willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another—which requires a finding that the defendant "knew that his conduct created a substantial and foreseeable risk, that he disregarded that risk[,] and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others," N.M. U.J.I. 14-1704; *see id.* at 14-342 n.3—"has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i). "This inquiry requires application of both federal law and [New Mexico] state law," as "[f]ederal law defines the meaning of the [ACCA's elements clause]" while "state law defines the substantive elements of the crime of conviction." *See Harris*, 844 F.3d at 1264.

25

The government contends that any violation of § 30-3-8(B) necessarily requires the threatened use of force against another person. This is because, the government argues, it is not possible to willfully discharge a firearm at or from a motor vehicle in a manner that creates a substantial and foreseeable risk to another person without threatening the use of force against another person. To support this argument, the government maintains that § 30-3-8(B) is similar to the Texas statute prohibiting the discharge of a firearm at or in the direction of one or more individuals, which we found constitutes a violent felony under the elements clause of the ACCA in *United States v. Hernandez*, 568 F.3d 827, 829–30 (10th Cir. 2009). According to the government, § 30-3-8(B) "creates a *de facto* requirement of proximity to the path of the bullet" and "threatens an injury resulting from physical force," making it like the Texas statute.

In contrast, Mr. Pam asserts two reasons why § 30-3-8(B) is not a violent felony under the ACCA's elements clause. First, he contends the reckless disregard element of § 30-3-8(B) removes it from coverage under the ACCA because recklessness is insufficient to satisfy the "use of force" provision of the elements clause. Second, Mr. Pam argues that § 30-3-8(B) does not require force to be used, attempted, or threatened *against the person of another*; rather, it merely requires force to be directed at or from a motor vehicle. We reject each of Mr. Pam's contentions in turn, and hold that the offense of willfully shooting at or from a motor vehicle with reckless disregard for the person of another—which requires that the defendant knew of the substantial and foreseeable risk of injury to another created by

26

his conduct and that he acted with disregard and indifference to the consequences—whether resulting in no injury or great bodily harm, constitutes a violent felony under the ACCA.

As we recently explained in *United States v. Hammons*, --- F.3d ---, 2017 WL 2884044, at *2 (10th Cir. July 7, 2017), "[t]he mental state required to commit a predicate offense bears on our determination of whether that offense qualifies as a violent felony under the ACCA." In *United States v. Duran*, 696 F.3d 1089, 1095 (10th Cir. 2012), and *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008), we held a mens rea of recklessness was insufficient to satisfy the physical-force requirements of the "crime of violence" definitions found in U.S.S.G. §§ 4B1.2(a) and 2L1.2. Relying on these decisions, Mr. Pam argues § 30-3-8(B) cannot satisfy the similarly-phrased provision in the ACCA because the statute may be violated with a showing of recklessness. But the Supreme Court's recent decision in *Voisine v. United States* leads us to conclude otherwise. 136 S. Ct. 2272 (2016).[15]

In *Voisine*, the Supreme Court examined whether "misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct," *id.* at 2276, may qualify as misdemeanor crimes of domestic violence under 18 U.S.C. § 922(g)(9), which are defined in part as offenses that have "as an element, the use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A)(ii). In interpreting this

---

[15] In reaching our decision, we need not address whether the Supreme Court's discussion in *Voisine v. United States*, 136 S. Ct. 2272 (2016), abrogated our decisions in *United States v. Duran*, 696 F.3d 1089 (10th Cir. 2012), and *United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008). This is because *Duran* and *Zuniga-Soto* did not involve construction of the ACCA's elements clause.

provision, the Supreme Court reasoned that the "word ['use'] is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct," and that it "does not exclude . . . an act of force carried out in conscious disregard of its substantial risk of causing harm." *Voisine*, 136 S. Ct. at 2279. The Supreme Court also "clarified that the categorical inquiry" of whether a statute has the use of physical force as an element "focuses on whether the force contemplated by the predicate statute is 'volitional' or instead 'involuntary[,]' [and that] it makes no difference whether the person applying the force had the specific intention of causing harm or instead merely acted recklessly." *Hammons*, --- F.3d at ---, 2017 WL 2884044 at *3 (quoting *Voisine*, 136 S. Ct. at 2279); *see also United States v. Mendez-Henriquez*, 847 F.3d 214, 222 (5th Cir. 2017) (noting "*Voisine* holds 'use' separates volitional acts from involuntary motion; not recklessness from intention").

Although the Supreme Court in *Voisine* analyzed § 921(a)(33)(A)(ii) and not the elements clause of the ACCA, we have already applied the *Voisine* Court's reasoning in the ACCA context. *See Hammons*, --- F.3d at ---, 2017 WL 2884044 at *3.[16] Applying that same reasoning again here leads us to the conclusion that a statute requiring proof only that the defendant acted willfully and with reckless disregard for

---

[16] The First Circuit's recent decision in *Bennett v. United States*, --- F.3d ---, 2017 WL 2857620, at *15–20 (1st Cir. 2017), raises questions as to whether the Supreme Court's reasoning in *Voisine* should be extended to the ACCA. However, absent en banc review or an intervening Supreme Court decision we are bound by our own recent decision extending *Voisine*'s reasoning to the ACCA in *United States v. Hammons*, --- F.3d ---, 2017 WL 2884044, at *2 (10th Cir. July 7, 2017).

28

the risk posed by that act to another person may categorically involve the use of physical force. Accordingly, § 30-3-8(B)'s element of recklessness does not bar it from constituting a violent felony under the elements clause of the ACCA, particularly as § 30-3-8(B) requires the willful discharge of a firearm, which requires "proof that the person acted intentionally in the sense that he was aware of what he was doing," *State v. Sheets*, 610 P.2d 760, 770 (N.M. App. 1980), as well as knowledge that his conduct created a substantial foreseeable risk and that he was wholly indifferent to the welfare and safety of others, *see* N.M. U.J.I. 14-1704; *id.* at 14-342 n.3.

Mr. Pam next asserts that § 30-3-8(B) does not constitute a violent felony under the elements clause of the ACCA because it does not require force to be directed against the person of another.[17] In support of this argument, Mr. Pam analogizes § 30-3-8(B) to a Kansas statute prohibiting the criminal discharge of a firearm at an occupied building, dwelling, or motor vehicle, which we determined did not qualify as a violent felony under the elements clause of the ACCA because it "requires force against a building or vehicle, but not against the *person* inside, as [the elements clause] requires." *United States v. Ford*, 613 F.3d 1263, 1271 (10th Cir. 2010). In addition, Mr. Pam relies on the position taken by the government in *Ortega v. United States*, No. 1:16-cv-00138-JAP-KK (D.N.M. Feb. 26, 2016), in which it

---

[17] The parties appear to agree that discharging a firearm involves the type of "*violent* force—that is, force capable of causing physical pain or injury to another person,"—contemplated by the elements clause. *Johnson v. United States*, 559 U.S. 133, 140 (2010).

conceded that a § 30-3-8(B) conviction for shooting at a motor vehicle with reckless disregard for the person of another "does not qualify as a violent felony under the [elements clause] of the ACCA" because it does "not necessarily require that the force be used, attempted, or [threatened] 'against the person of another.'"[18]

To be sure, the plain language of § 30-3-8(B) is broad. Unlike the Texas statute at issue in *Hernandez*, § 30-3-8(B) does not expressly require force to be directed at or in the direction of another person. Rather, the statute does not require force to be directed against any object for violations based on shooting *from* a motor vehicle, and when prohibiting force directed *at* something, it is force directed "at . . . a motor vehicle." N.M. Stat. Ann. § 30-3-8(B). Nevertheless, the government contends that because § 30-3-8(B) requires a defendant to knowingly create a substantial and foreseeable risk to the welfare and safety of others, it creates a de facto requirement of proximity to the bullet—yielding the same essential results as the statute in *Hernandez*. But we must look to the elements, not the results, of a statute to determine if it constitutes a violent felony under the ACCA. By its plain terms the statute at issue here encompasses a wider range of conduct than that prohibited in *Hernandez*. This is because it appears to criminalize not only situations where a defendant shoots at, near, or in the proximity of another person, but also

---

[18] Without providing any substantive analysis, the magistrate judge in *Ortega v. United States* agreed with the government's positions and recommended that the defendant be resentenced in light of *Johnson*. No. 1:16-cv-00138-JAP-KK (D.N.M. Feb. 26, 2016). The district court accepted the magistrate judge's recommendation without any comment.

30

situations where the intended target is property, or where there is no intended target at all, if in doing so the shooter is aware of but disregards the risk to another.

Despite the broad language of § 30-3-8(B), its application is restricted by the meaning given to it by New Mexico courts and, for purposes of determining whether it constitutes a predicate offense under the ACCA, we are limited to considering situations "in which there is a 'realistic probability, not a theoretical possibility' [that] the state statute would apply." *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017). In expressly rejecting its previous holding that § 30-3-8(B) was "designed to protect the public from reckless shooting into a vehicle and the possible property damage and bodily injury that may result," *State v. Gonzales*, 824 P.2d 1023, 1027 (N.M. 1992), *overruled by State v. Montoya*, 306 P.3d 426 (N.M. 2013), the Supreme Court of New Mexico recently clarified that § 30-3-8(B) is "intended to protect against threats to personal safety, and not to threats to property," and noted this interpretation is supported by the statute's varying penalty gradations "based on differing degrees of potential or actual personal harm to a human victim," *Montoya*, 306 P.3d at 436, 437. This understanding of the New Mexico Legislature's intent with respect to § 30-3-8(B) is also reflected in *State v. Torres*, No. 31,567, 2013 WL 4515903, at *2 (N.M. App. Feb. 11, 2013) (unpublished), where the New Mexico Court of Appeals held that "[b]ecause the mandatory [uniform jury instruction] definition of reckless disregard makes clear that the substantial and foreseeable risk is to the 'welfare and safety' of others, it indicates that the risk of harm that is encompassed by [§ 30-3-8(B)] is the risk to the physical person of another."

31

Moreover, the New Mexico Supreme Court has described § 30-3-8(B) as "an elevated form of aggravated battery," *State v. Tafoya*, 285 P.3d 604, 614 (N.M. 2012), and noted that "at its core, Section 30-3-8 is one of a group of statutes that proscribe assault and battery," *State v. Marquez*, 376 P.3d 815, 822 (N.M. 2016).

These decisions provide controlling declarations that application of § 30-3-8(B) is limited to situations involving the willful discharge of a firearm by the defendant coupled with knowledge that in doing so he is creating a substantial and foreseeable risk to the safety and welfare of the *person* of another. *See* N.M. U.J.I. 14-342. Thus, in contrast to the Kansas statute analyzed in *Ford*, which merely requires force be used against an occupied building or vehicle without any risk of harm to the person inside—thereby making "the requisite person . . . one step removed"—§ 30-3-8(B)'s requirement of knowingly creating a substantial and foreseeable risk to the welfare and safety of another person puts "the requisite person" at the forefront—necessarily requiring a person to have some level of proximity to the bullet and the defendant to know of the risk created by that proximity by the criminal defendant. *Ford*, 613 F.3d at 1271. It is therefore not possible to willfully discharge a firearm in the manner proscribed by § 30-3-8(B) without at least attempting or threatening the use of physical force against the person of another. *See United States v. Mendez-Henriquez*, 847 F.3d 214, 222–25 (5th Cir. 2017) (concluding volitionally shooting at an occupied motor vehicle, even when no one is targeted, at the very least has as a subsumed element the threatened use of force against the person of another).

32

This conclusion is supported by our recent decision in *United States v. Hammons*, --- F.3d ---, 2017 WL 2884044, at *2–4 (10th Cir. July 7, 2017). There, a panel of this court held that Oklahoma's drive-by shooting statute, Okla. Stat. tit. 21, § 652(B), qualifies as a violent felony under the ACCA's elements clause. The Oklahoma statute at issue in *Hammons* provides:

> Every person who uses any vehicle to facilitate the intentional discharge of any kind of firearm, crossbow or other weapon in conscious disregard for the safety of any other person or persons shall upon conviction be punished . . . .

Okla. Stat. tit. 21, § 652(B) (1992). Although the Oklahoma statute, like § 30-3-8(B), does not contain a requirement that the discharge of the firearm be directed at or in the direction of another person, let alone at any object in particular, we held that the statute unquestionably requires that physical force be employed "against the person of another" as required by 18 U.S.C. § 924(e)(2)(B)(i). We reached this conclusion because "[t]he Oklahoma Court of Criminal Appeals—the court of last resort for state criminal cases—has held that § 652(B) is 'indisputably a crime against the person.'" *Hammons*, --- F.3d at ---, 2017 WL 2884044 at *2 n.3 (quoting *Burleson v. Saffle*, 46 P.3d 150, 152 (Okla. Crim. App. 2002)). In *Burleson,* the Oklahoma Court of Criminal Appeals explained that

> [d]rive-by shooting, like shooting with intent to kill or assault and battery with a deadly weapon, is indisputably a crime against the person. The Legislature intended to stop people from using vehicles to aid them in shooting other people, and the statute's focus is on behavior which aids the intentional shooting.

*Burleson*, 46 P.3d at 152. The New Mexico Supreme Court has made similar pronouncements regarding § 30-3-8(B)—New Mexico's drive-by-shooting statute—noting that the statute is intended to protect against threats to personal safety, rather than threats to property. *See Montoya*, 306 P.3d at 436–37.

Finally, because of the New Mexico courts' construction of the statute, we find it more theoretical than realistic that § 30-3-8(B) would be applied to conduct not involving the use, attempted use, or threatened use of force *against the person of another*. *See Harris*, 844 F.3d at 1270. Mr. Pam has done nothing to dissuade us of this conclusion. He points to no case, including his own, in which New Mexico has applied § 30-3-8(B) to circumstances not involving the use, attempted use, or threatened use of force against the person of another. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (holding that to meet the realistic probability standard, a defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the . . . manner for which he argues"). And our own review of New Mexico cases has failed to identify any. As a result, while we recognize the existence of hypothetical scenarios that could arguably support a conviction under § 30-3-8(B) without implicating the use, attempted use, or threatened use of force against the person of another, given the lack of precedent supporting such hypotheticals there is not a realistic probability that New Mexico would punish such conduct under § 30-3-8(B). *See United States v. Taylor*, 630 F.3d 629, 634 (7th Cir. 2010) ("In applying the categorical approach, we are concerned with the ordinary case, not fringe possibilities.").

34

Under New Mexico law, shooting at or from a motor vehicle with reckless disregard for the person of another, whether resulting in no injury or great bodily harm, has as an element the use, attempted use, or threatened use of physical force against the person of another. Mr. Pam therefore has three qualifying felony convictions under the ACCA, making his 180-month sentence lawful and providing an alternative basis for affirming the district court's dismissal of Mr. Pam's § 2255 motion.

## IV.    CONCLUSION

For the reasons set forth above, we AFFIRM the district court's dismissal of Mr. Pam's § 2255 motion.