**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

CLAY O'BRIEN MANN,

    Defendant - Appellee.

No. 17-2117

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:14-CR-03092-JAP-1)**
_____

Finnuala K. Tessier, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Kenneth A. Blanco, previous Acting Assistant Attorney General, and Trevor N. McFadden, previous Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., with her on the opening brief; John P. Cronan, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., with her on the reply brief; James D. Tierney, Acting United States Attorney, Paige Messec, Assistant United States Attorney, and James R. W. Braun, Appellate Chief, District of New Mexico, Albuquerque, New Mexico, with her on the opening and reply briefs), for Plaintiff - Appellant.

Brian A. Pori, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellee.
_____

Before **MATHESON**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

This case forces us to decide whether assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6), is a crime of violence under 18 U.S.C. § 924(c)(3)(A). We hold that it is. Because the district court concluded otherwise, we reverse its judgment and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

We have previously described the events precipitating this prosecution. *See United States v. Mann*, 786 F.3d 1244, 1246–48 (10th Cir. 2015). In brief, Clay O'Brien Mann's neighbors invited about a dozen friends to join them late one summer evening for a bonfire at their undeveloped property on an Indian reservation. These occasional gatherings irritated Mr. Mann. And when this particular soirée continued into the early morning, Mr. Mann, who had been drinking, hurled a lit artillery-shell firework in the direction of the partygoers. The firework exploded, chaos ensued, and his neighbors and their guests ran away screaming. Three of them unwittingly retreated in the direction of Mr. Mann. He then fired nine shots with a semiautomatic rifle, killing one person and wounding two others. Mr. Mann thereafter patrolled the fence line separating the properties while shouting profanities and threats at other partygoers. He eventually drove away and was apprehended later that morning.

Mr. Mann, who is an enrolled member of the Navajo Nation and Indian Tribe, was indicted on eight counts, and a jury convicted as to five of them. The district court vacated one of those convictions[1] and sentenced Mr. Mann, all told, to just over fourteen

---

[1] Mr. Mann was ultimately convicted of one count of involuntary manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112(a); two counts of assault

2

years in prison. Mr. Mann appealed, and we affirmed. In the course of affirming, we noted that but for a "careless error" by the government, Mr. Mann might well have received an additional twenty-five years on his sentence for a second § 924(c) conviction. *Id.* at 1249 n.6; *see* 18 U.S.C. § 924(c)(1)(C)(i); *Deal v. United States*, 508 U.S. 129, 131–37 (1993). That error lay in Count 8 of the original indictment, which charged Mr. Mann with "knowingly discharg[ing] and carry[ing] a firearm . . . during and in relation to a crime of violence, . . . namely, assault resulting in serious bodily injury as charged in Count 6 herein," in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Indictment at 3–4, *United States v. Mann*, No. 11-cr-01528-JAP (D.N.M. June 7, 2011), ECF No. 33. The problem was that the indictment charged "assault resulting in serious bodily injury" in Count 7, not in Count 6. *Id.* at 3. After realizing the government's mistake, the district court dismissed Count 8 without prejudice, allowing the government to present a corrected § 924(c)(1)(A)(iii) charge to another grand jury if it desired. *Mann*, 786 F.3d at 1249 n.6; Transcript of Jury Trial at 6–7, *Mann*, No. 11-cr-01528-JAP, ECF No. 125. The government elected to do so.

By the time we decided *Mann*, a second grand jury had already re-indicted Mr. Mann on a corrected § 924(c)(1)(A)(iii) charge. That charge went to trial, but the district court declared a mistrial after the jury was unable to reach a unanimous verdict. Before a third trial was set to begin, Mr. Mann moved to dismiss the indictment, arguing that

---

resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6); and one count of discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6), is not a crime of violence under § 924(c)(1)(A). The district court agreed. *United States v. Mann*, No. CR 14-3092 JAP, 2017 WL 3052521 (D.N.M. June 16, 2017). Relying on a line of precedent from this court holding that recklessness is an insufficient mens rea to constitute a crime of violence—and concluding that proof of recklessness would suffice to convict under § 113(a)(6)—the district court held that § 113(a)(6) is not a crime of violence for purposes of § 924(c)(3). *Id.* at *2–5. The district court dismissed the indictment, and the government timely brought this appeal.

## II. DISCUSSION

We generally review the dismissal of an indictment for abuse of discretion. *United States v. Pauler*, 857 F.3d 1073, 1075 (10th Cir. 2017). But where, as here, the district court's judgment rests on a question of law, our review is de novo. *Id.*; *United States v. Serafin*, 562 F.3d 1105, 1107 (10th Cir. 2009) ("We review the district court's legal conclusion that a particular offense constitutes a crime of violence de novo.").

The operative indictment charged Mr. Mann with discharging a firearm during and in relation to a crime of violence, namely, assault resulting in serious bodily injury, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). By enacting § 924(c)(1), Congress imposed various "increased penalties" for use of a firearm in relation to certain crimes. *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016). As relevant here, § 924(c)(1)(A) provides that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm" shall be subject to some additional punishment. On a second or subsequent

4

conviction, a defendant is to be sentenced to a term of imprisonment of not less than twenty-five years. *Id.* § 924(c)(1)(C)(i).

Crimes of violence are defined at § 924(c)(3). That subsection offers two independent definitions. Under the first definition, a crime of violence means any offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). Under the second definition, a crime of violence means any offense that is a felony and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). In this appeal the government argues that assault resulting in serious bodily injury, § 113(a)(6), qualifies under either definition. But in light of our recent holding that § 924(c)(3)(B) is unconstitutionally vague, *United States v. Salas*, 889 F.3d 681, 683 (10th Cir. 2018), our analysis will begin and end with § 924(c)(3)(A).

In determining whether a § 113(a)(6) offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A), we apply a "categorical approach." *United States v. Pam*, 867 F.3d 1191, 1203 (10th Cir. 2017). In other words, we look only to the elements that must be proven to convict a person under § 113(a)(6) in the abstract, "and *not* to the particular facts underlying" Mr. Mann's actual conviction for that offense. *Id.* (internal quotation marks omitted).

To convict Mr. Mann of assault resulting in serious bodily injury, the government needed to prove (1) the defendant assaulted a victim and (2) the victim suffered serious

5

bodily injury. 18 U.S.C. § 113(a)(6); *see id.* § 1153(a) (providing that "[a]ny Indian" who commits "a felony assault under section 113," "within the Indian country, shall be subject to the same laws and penalties as all other persons committing [such offense], within the exclusive jurisdiction of the United States"); *United States v. Zunie*, 444 F.3d 1230, 1233 (10th Cir. 2006). Every conviction under § 113(a)(6) requires an assault. "To determine if every violation of [§ 113(a)(6)] is a crime of violence, then, we need only determine whether . . . an assault that causes [serious] bodily injury" necessarily involves the use, attempted use, or threatened use of physical force against the person or property of another. *See United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017) (holding that 18 U.S.C. § 111(b) is a crime of violence under U.S.S.G. § 4B1.2), *cert. denied*, 138 S. Ct. 1582. As another federal court of appeals recently put it, the "question . . . answers itself." *See United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) ("How would it be possible to suffer serious bodily injury without force capable of producing such injury?"). We reiterate here that "[a]n assault that causes [serious] bodily injury by definition involves the use of physical force." *Kendall*, 876 F.3d at 1270.

Yet the district court in this case concluded that § 113(a)(6) is not a crime of violence under the categorical approach because it is possible to violate that statute with a mens rea of recklessness. The district court was partially correct: recklessness is indeed sufficient[2] to support a conviction under § 113(a)(6). *Zunie*, 444 F.3d at 1235. The district

---

[2] *Zunie*'s facts are illustrative of how § 113(a)(6) may be applied to defendants less culpable than Mr. Mann. The defendant in *Zunie*, "dangerously drunk and recklessly out of control, drove his truck into the opposite lane of traffic and collided head-on with a smaller vehicle," leaving a four-year old boy permanently and

6

court was incorrect, however, to hold that § 113(a)(6) is therefore not a crime of violence. To see why § 113(a)(6) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A), notwithstanding that it can be violated by defendants with a mens rea of recklessness, we turn to a line of cases beginning with *Leocal v. Ashcroft*, 543 U.S. 1 (2004).

In *Leocal*, the Supreme Court considered whether a conviction under a Florida statute criminalizing drunken driving counted as a crime of violence for purposes of 18 U.S.C. § 16.[3] The Florida statute required no mens rea at all, reaching "negligent or merely accidental conduct" just as much as purposeful or reckless conduct. *Id.* at 9. A crime of violence, meanwhile, must involve "the 'use . . . of physical force *against the person or property of another.*'" *Id.* (quoting § 16(a)). Such a "use," the Court reasoned, "requires active employment." *Id.* ("While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident."). Because the Florida statute reaches negligent or merely accidental conduct, it can be violated without the use of physical force against the person or property of another and so, the Court held, it is not a

---

severely disabled. 444 F.3d at 1232. The serious-bodily-injury element was clearly established. But we also held the evidence was sufficient to prove the defendant had committed an assault. In so holding we drew a line between "mere negligence," which we suggested would not be enough to support a conviction under § 113(a)(6), and recklessness, which is. *Id.* at 1235 & n.2.

[3] The term "crime of violence" appears in several federal statutes. For present purposes, the definitions in §§ 924(c)(3)(A) and 16(a) are substantially identical. The only textual difference is that a crime of violence must be a felony to satisfy § 924(c)(3)(A), while some misdemeanors will suffice to satisfy § 16(a).

crime of violence. *Id.* at 9–10. As the unanimous Court was careful to note, that case did not present "the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence," *id.* at 13, and it declined to hazard any guidance in dicta.

In *United States v. Zuniga-Soto*, 527 F.3d 1110 (10th Cir. 2008), we considered whether a conviction under a Texas statute for assaulting a public servant counted as a crime of violence for purposes of a sentencing guideline.[4] We first determined that, under Texas law, proof of recklessness was sufficient to convict. *Id.* at 1122 (citing *Johnson v. State*, 172 S.W.3d 6, 10 (Tex. App. 2005)). From there, we asked "whether a *mens rea* component of recklessness may satisfy" the "use of physical force requirement" found in the applicable crime-of-violence definition. *Id.* at 1122–23. We held that it may not. *Id.* at 1123. We explained that our conclusion was "guided by three factors." *Id.* The first was the Supreme Court's holding in *Leocal*, the second was "a survey of our own precedent," and the third was "the persuasive reasoning of our sister circuits." *Id.* As we have already discussed, *Leocal* is inconclusive. As for our own (pre-*Leocal*) precedent, we had suggested in dicta that "a crime with a *mens rea* of recklessness could qualify as a crime of violence." *Id.* (citing *Zunie*, 444 F.3d at 1235 n.2). But, persuaded by out-of-circuit case law, we abandoned our dicta in *Zunie* and concluded that "recklessness falls into the category of accidental conduct that the *Leocal* Court described as failing to satisfy the use

---

[4] The term "crime of violence" also appears more than once in the United States Sentencing Guidelines. Under U.S.S.G. § 2L1.2, a crime of violence means (among other things) any felony under state or federal law that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Zuniga-Soto*, 527 F.3d 1110, 1115 (10th Cir. 2008).

of physical force requirement." *Id.* at 1124. "We therefore h[e]ld that a *mens rea* of recklessness does not satisfy [the] use of physical force requirement under § 2L1.2's definition of 'crime of violence.'" *Id.*

In the years following *Zuniga-Soto* we extended its reasoning to new contexts. *See, e.g.*, *United States v. Duran*, 696 F.3d 1089, 1095 (10th Cir. 2012) (holding that aggravated assault under Texas law could be committed with a reckless state of mind and is therefore not a crime of violence under U.S.S.G. § 4B1.2); *United States v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011) (holding that Colorado's version of manslaughter involving only reckless conduct is not a crime of violence under U.S.S.G. § 4B1.2).

In *Voisine v. United States*, 136 S. Ct. 2272 (2016), however, the Supreme Court declined to extend *Leocal*'s reasoning to convictions for reckless assault—at least for purposes of 18 U.S.C. § 922(g)(9), a federal statute prohibiting persons convicted of a "misdemeanor crime of domestic violence" from possessing a firearm. The petitioners in that case were originally convicted under a section of the Maine Criminal Code which makes it a misdemeanor to "intentionally, knowingly or recklessly cause[ ] bodily injury or offensive physical contact to another person." *Id.* at 2277 (quoting Me. Stat. tit. 17–A, § 207(1)(A)). They argued they were not persons convicted of a misdemeanor crime of domestic violence under § 922(g)(9) because their Maine convictions "could have been based on reckless, rather than knowing or intentional, conduct." *Id.*

Section 922(g)(9) takes its crime-of-violence definition from § 921(a)(33)(A), which in relevant part defines "misdemeanor crime of domestic violence" as a misdemeanor that "has, as an element, the use or attempted use of physical force." The

9

parties and the Court zeroed in on the word "use." *Id.* at 2278 (noting that "the word 'use' . . . is the only statutory language either party thinks relevant"). Turning to dictionary definitions of the noun "use," the Court concluded that "the force involved in a qualifying assault must be volitional," as opposed to some sort of "involuntary motion," which would not count as "an active employment of force." *Id.* at 2278–79. And because the reckless use of force is a volitional use of force, the Court concluded that "[a] person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally." *Id.* at 2280. Thus § 922(a)(33)(A)'s definition of a misdemeanor crime of violence "contains no exclusion for convictions based on reckless behavior." *Id.*

Turning to *Leocal*, the *Voisine* Court saw "nothing" in the earlier case to "suggest[ ] . . . that 'use' marks a dividing line between reckless and knowing conduct." *Id.* at 2279. Rather, the *Leocal* Court's exclusion of "merely accidental" conduct from crimes of violence under 18 U.S.C. § 16 "fully accords" with the *Voisine* Court's exclusion of involuntary conduct from misdemeanor crimes of violence under 18 U.S.C. § 921(a)(33)(A). *Id.* at 2279 & 2280 n.4.

Since *Voisine* was decided, we have repeatedly questioned the continuing vitality of *Zuniga-Soto* and its progeny. In *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017), we held that a violation of Oklahoma's drive-by shooting statute qualifies as a violent felony under the federal Armed Career Criminal Act ("ACCA").[5] In so holding,

---

[5] The ACCA yields yet another example of a federal statute employing a "use of force" definition similar to the one found in 18 U.S.C. § 924(c)(3)(A). *See* 18 U.S.C.

we rejected the defendant's reliance on *Zuniga-Soto*. *Id.* at 1055. After *Voisine*, we observed, a proper categorical approach focuses on whether the requisite force "is 'volitional' or instead 'involuntary'—it makes no difference whether the person applying the force had the specific intention of causing harm or instead merely acted recklessly." *Id.* at 1056. But we left "for another day" the question whether *Voisine* abrogated *Zuniga-Soto*, *id.* at 1056 n.4, because we determined the Oklahoma drive-by-shooting offense at issue in that case required the deliberate use of physical force, not mere recklessness, *id.* at 1055–56.

About a month later, we held that a violation of New Mexico's drive-by-shooting statute likewise qualifies as a violent felony under the ACCA. *Pam*, 867 F.3d at 1208–11. We again rejected the defendant's reliance on *Zuniga-Soto*, adopting instead *Voisine*'s reasoning to conclude that, under the ACCA, "a statute requiring proof only that the defendant acted willfully and with reckless disregard for the risk posed by that act to another person may categorically involve the use of physical force." *Id.* at 1208. And we again found it unnecessary to address whether *Voisine* abrogated *Zuniga-Soto*, as our prior precedent did not purport to construe the ACCA clause at issue in *Pam*. *Id.* at 1207 n.5.

The government now urges us to apply *Voisine*'s reasoning to § 924(c)(3)(A), much as earlier panels applied *Voisine*'s reasoning to the ACCA. Mr. Mann responds with various arguments. First, he enumerates six reasons why *Voisine* "left intact

§ 924(e)(2)(B)(i) (defining "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . *has as an element the use, attempted use, or threatened use of physical force against the person of another*" (emphasis added)).

11

precedent holding that 18 U.S.C. § 16 does not encompass an offense with a recklessness mens rea." Appellee's Br. at 14–24 (arguing that *Voisine* "does not *require* this court to abandon its relevant recklessness precedent" (emphasis added)). We need not belabor these arguments. In this case, we construe § 924(c)(3)(A)—not § 16 or § 921(a)(33)(A). We may assume without deciding that *Voisine* does not *require* us to rule in favor of the government.[6] But neither does our prior precedent require us to rule in favor of Mr. Mann.

Indeed, this court has already extended *Voisine*'s reasoning to the ACCA. *Pam*, 867 F.3d at 1207; *Hammons*, 862 F.3d at 1056. In *Voisine*, the Court reasoned that harm caused by reckless conduct—"acts undertaken with awareness of their substantial risk of causing injury"—is "the result of a deliberate decision to endanger another." 136 S. Ct. at 2279. And reckless conduct is therefore both "the [volitional] use . . . of physical force" for purposes of 18 U.S.C. § 921(a)(33)(A), *see id.* at 2279–80, and "the [volitional] use . . . of physical force against the person of another" for purposes of 18 U.S.C. § 924(e)(2)(B)(i), *Pam*, 867 F.3d at 1207–08. We hold today that *Voisine*'s reasoning extends to § 924(c)(3)(A) as well: reckless conduct is no less "the [volitional] use . . . of physical force against the person or property of another," for purposes of 18 U.S.C. § 924(c)(3)(A).

---

[6] The government argues that *Voisine* abrogated *Zuniga-Soto*, *Armijo*, and *Duran*. But none of those cases construed § 924(c)(3)(A), and so once more we decline to address whether their holdings survive *Voisine*. *United States v. Pam*, 867 F.3d 1191, 1207 n.15 (10th Cir. 2017); *United States v. Hammons*, 862 F.3d 1052, 1056 n.4 (10th Cir. 2017).

Mr. Mann's arguments to the contrary are not persuasive. For instance, he argues that the drive-by-shooting offenses at issue in *Hammons* and *Pam* both "include[ ] as an element willful conduct as well as a reckless element." Appellee's Br. at 29. Because § 113(a)(6) can be violated by reckless driving, *Zunie*, 444 F.3d at 1232–36, it criminalizes "pure recklessness," Appellee's Br. at 30, which he argues ought not be treated as a crime of violence. Mr. Mann appears to suggest that we join the Eighth Circuit in carving out an exception for, at least, offenses that encompass reckless driving. Appellee's Br. at 30 (citing *United States v. Fields*, 863 F.3d 1012, 1014–16 (8th Cir. 2017)). We decline to do so. Over Judge Loken's dissent, the *Fields* court adhered to pre-*Voisine* Eighth Circuit precedent, explaining that it "remain[ed] dispositive of the present appeal." *Fields*, 863 F.3d at 1015. We are not burdened by such precedent in this circuit, and we see no reason to treat reckless driving as categorically different than other forms of reckless conduct. We note also that nothing in *Voisine* suggests a distinction between "recklessness" and "pure recklessness," as Mr. Mann distinguishes those terms.

In addition, the nature of a § 113(a)(6) violation requires that the actor's use of force be directed at the person of another. To violate § 113(a)(6), Mr. Mann must have committed an assault and that assault must have resulted in serious bodily injury. Because § 113 nowhere defines "assault," in *United States v. Gauvin,* we adopted the general practice of giving common law meaning to common law terms used by a federal criminal statute that does not otherwise define the term, and we concluded that assault as used in § 113 means "an attempted battery" or "placing another in reasonable apprehension of a battery." 173 F.3d 798, 802 (10th Cir. 1999) (quoting Wayne R. LaFave & Austin W.

13

Scott, Jr., *Substantive Criminal Law*, § 7.16 (1986)). In turn, Mr. Mann must have acted with at least recklessness in committing the assault resulting in serious bodily injury. To act recklessly "is to take . . . action with a certain state of mind (or *mens rea*)—in the dominant formulation, to 'consciously disregard[ ]' a substantial risk that the conduct will cause harm to another." *Voisine*, 136 S. Ct. at 2278 (quoting ALI, Model Penal Code § 2.02(2)(c) (1962)); *see Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994) ("The criminal law . . . generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*." (emphasis added)). We have, moreover, repeatedly held that § 113(a)(6) is a general intent crime, *Zunie*, 444 F.3d at 1233; *United States v. Benally*, 146 F.3d 1232, 1237 (10th Cir. 1998), by which we mean a criminal "act [must be] done voluntarily and intentionally, and not because of mistake or accident," *Zunie*, 444 F.3d at 1234 (quotation marks omitted). Contrary to Mr. Mann's argument, a defendant convicted of § 113(a)(6) has necessarily committed a "purposeful act," Appellee's Br. at 30, and exhibited "willful conduct," *id.* at 29. And that purposeful act or willful conduct can take many forms: it could be the pulling of the trigger of a gun or the mere driving of a car ("pure recklessness," as Mr. Mann calls it). The underlying action does not much matter. What matters instead is whether the act was done with (at least) conscious disregard of a substantial risk that the behavior will cause harm to another. If it was, then the act will support a § 113(a)(6) conviction, and, in turn, an increased penalty under § 924(c)(3)(A).

Mr. Mann also argues there are "meaningful differences" between the ACCA and § 924(c)(3)(A), such that even if *Voisine*'s reasoning is properly extended to the former,

14

it is not properly extended to the latter. Appellee's Br. at 32. But the only difference he

identifies is that the ACCA definition applies only to force used "against the person of

another," while § 924(c)(3)(A) refers to force used "against the person or property of

another." These "against" clauses distinguish the ACCA and § 924(c)(3)(A) definitions

from the § 921(a)(33)(A) definition at issue in *Voisine,* which contains no comparable

clause. *See Bennett v. United States*, 868 F.3d 1, 19 (1st Cir. 2017) (noting the canon

against surplusage "at least suggest[s] that the follow-on 'against' phrase . . . must be

conveying something that the phrase 'use . . . of physical force' does not"), *opinion*

*withdrawn and vacated*, 870 F.3d 34 (1st Cir. 2017), *reasoning adopted by United States*

*v. Windley*, 864 F.3d 36, 37 n.2 (1st Cir. 2017). And a panel of the Sixth Circuit found

that distinction significant when interpreting similar language in the Sentencing

Guidelines:

> [T]he definition in § 4B1.2 includes language that the definition in *Voisine* did not. There, § 921(a)(33)(A) required only "the use . . . of physical force" *simpliciter* (so far as the "use of force" element was concerned); here, in contrast, § 4B1.2 requires "the use . . . of physical force *against the person of another*[.]" (Emphasis added.) The italicized language is a restrictive phrase that describes the particular type of "use of physical force" necessary to satisfy § 4B1.2. *See generally* Shertzer, *The Elements of Grammar* 7 (1986). Specifically, § 4B1.2 requires not merely a volitional application of force, but a volitional application "against the person of another."

*United States v. Harper*, 875 F.3d 329, 331 (6th Cir. 2017), *petition for cert. filed* (U.S.

Jan. 30, 2018) (No. 17-7613); *cf. Voisine*, 136 S. Ct. at 2278 (noting that "the word 'use'

. . . is the only statutory language either party thinks relevant"). *Harper* went on to

explain that *Voisine*'s reasoning should *not* be extended to a provision of the Sentencing

15

Guidelines that included the language "against the person of another." *See* 875 F.3d at 332 ("That phrase is not meaningless, but restrictive. And understood the way the English language is ordinarily understood, it narrows the scope of the phrase 'use of force' to require not merely recklessness as to the consequences of one's force, but knowledge or intent that the force apply to another person.").

*Harper* is in tension with our opinion in *Pam*, as *Harper* itself noted.[7] *See id.* at 332 (observing that *Pam* did not "acknowledge, much less analyze, the language that § 4B1.2 has but that the provision in *Voisine* did not: namely, 'against the person of another'"). We are bound by our prior panel opinions in *Pam* and *Hammons*, and Mr. Mann does not ask us to overrule them. But he does ask us to refrain from extending them beyond their specific holdings. He argues that by including a broader "against" clause in § 924(c)(3)(A)—one that reaches harm to property as well as persons—Congress meant to limit crimes of violence to those crimes which were necessarily committed by a person specifically aiming to use force *against* a person or property. *See* Appellee's Br. at 32 (arguing that, with respect to § 924(c)(3), "the 'against' phrase cannot be explained away as just a means to clarify that only harm to a person is relevant").

We are not persuaded that the presence of the words "or property" in § 924(c)(3)(A) can support the weight Mr. Mann would have us place on them. The

---

[7] *Harper*'s reasoning is also at odds with its own circuit's binding precedent. In *Harper*, the unanimous three-judge panel explained it was reluctantly following *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017), which had already held that a violation of 18 U.S.C. § 113(a)(6), the very statute at issue in this case, is a crime of violence under U.S.S.G. § 4B1.2(a).

better reading, we think, is simply that § 924(c)(3)(A) reaches property crimes and the ACCA does not. We do not believe that Congress, by expanding the reach of § 924(c)(3)(A) relative to the ACCA in an obvious textual sense, simultaneously intended to *restrict* its reach by surreptitiously adding a heightened mens rea requirement. Were we to accept Mr. Mann's account, we would need to construe the "ACCA's follow-on 'against' phrase [as serving] a wholly distinct narrowing function from the one that its similarly worded counterpart in [§ 924(c)(3)(A)] performs." *Bennett*, 868 F.3d at 19 n.15. That would be the wrong result. As the Sixth Circuit observed in a related context, "[a]ll that is going on is that the category of victims is larger with today's statute." *Verwiebe*, 874 F.3d at 263. "That one statute requires a victim of the 'use of force' in one way, and the other statute requires a victim in another way, does not offer a meaningful basis for [a mens rea] distinction." *Id.*

Mr. Mann also invokes the rule of lenity. "But 'the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.'" *United States v. Castleman*, 572 U.S. 157, 134 S. Ct. 1405, 1416 (2014) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). Where, as here, "the customary tools of statutory interpretation convince the court of a specific meaning for statutory language," the rule of lenity is inapplicable. *United States v. Alexander*, 802 F.3d 1134, 1141 (10th Cir. 2015).

One question remains: if § 113(a)(6) could ever be violated by a defendant with a mens rea less than recklessness—say, negligence—then § 113(a)(6) may not be a crime

17

of violence. *See Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) ("Because we examine what the [ ] conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized." (internal quotation marks and brackets omitted)). But Mr. Mann has conceded that "[t]he least of the acts criminalized by § 113(a)(6) is the reckless causing of serious bodily injury." Appellee's Br. at 26; *see Zunie*, 444 F.3d at 1235 n.2 (suggesting as much in dicta). We accept his concession and conclude that § 113(a)(6) is categorically a crime of violence under 18 U.S.C. § 924(c)(3)(A). Because the district court ruled otherwise in dismissing the government's indictment, its judgment cannot stand.

## III. CONCLUSION

For the reasons stated, the district court's judgment is REVERSED. We REMAND this matter for further proceedings consistent with this opinion.