**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 13, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANGELITA BENALLY,

    Defendant - Appellant.

No. 20-2157

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:19-CR-03595-KWR-1)**

_____

Emily P. Carey, Assistant Federal Public Defender (Tania Shahani, Research and Writing Specialist, with her on the briefs), Office of the Federal Public Defender for the District of New Mexico, Albuquerque, New Mexico, appearing for the Appellant.

Frederick Mendenhall, Assistant United States Attorney (Fred J. Federici, Acting United States Attorney, with him on the briefs), Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, appearing for the Appellee.

_____

Before **PHILLIPS**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

Defendant Angelita Benally was responsible for a head-on car crash that resulted in the death of her front seat passenger and severely injured the other driver. Benally was indicted on one count of involuntary manslaughter in Indian Country

and one count of assault resulting in serious bodily injury.  Benally and the government entered into a written plea agreement.  Under the terms of that agreement, Benally pleaded guilty to the involuntary manslaughter charge and the government dismissed the assault charge.  The agreement also provided that the district court would order restitution pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A.

The district court sentenced Benally to a term of imprisonment of thirty months, to be followed by a three-year term of supervised release.  In accordance with the terms of the plea agreement, the district court ordered Benally to pay restitution pursuant to the MVRA.  More specifically, the district court ordered Benally to pay restitution to the deceased passenger's family and to the other driver.

Benally appealed the district court's restitution order, arguing initially that the district court lacked authority under the MVRA to order her to pay restitution to the other driver because he was not a victim of the involuntary manslaughter offense. After the parties filed their appellate briefs, the Supreme Court issued its decision in *Borden v. United States*, 141 S. Ct. 1817 (2021).  Benally now argues, in light of *Borden*, that the district court lacked authority to order restitution "under the MVRA at all," and instead "may only grant restitution in its discretion under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663."  Aplt. Supp. Br. at 6.  And she in turn argues that we "must reverse with instructions to vacate the portion of her restitution order that provides compensation for losses sustained by" the other driver. *Id*. at 10.

2

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that Benally has failed to establish her entitlement to plain-error relief.  Consequently, we affirm the judgment of the district court.

## I

### *Factual history*

In the early morning hours of March 5, 2019, the New Mexico State Police (NMSP) began receiving calls regarding a vehicle driving westbound in the eastbound lanes of Interstate 40 (I-40) near mile marker 100.  Shortly thereafter, the NMSP were dispatched to mile marker 97 of eastbound I-40 regarding a vehicle crash.  That location was within the Acoma Pueblo Indian Reservation.

An NMSP officer who arrived on the scene determined from the physical evidence that a red Saturn Vue was traveling westbound in the eastbound lanes of I-40 and struck a silver Nissan Altima that was traveling eastbound.  Both vehicles were severely damaged in the accident.  The officer spoke with the driver of the Saturn, who was identified as Benally.  Benally told the officer that she had consumed "four cans" and the officer could smell alcohol emanating both from Benally and her vehicle.  ROA, Vol. II at 14.  Benally stated that she and her front seat passenger were traveling home, but she was not able to identify where her home was.  The officer also spoke with the driver of the Altima, J.G.  J.G. was unable at that time to provide clear details regarding what occurred, but he confirmed that he was driving eastbound at the time of the accident.

Both Benally and J.G. sustained severe injuries as a result of the crash and were transported to the University of New Mexico Hospital in Albuquerque. The front seat passenger in Benally's vehicle, L.C., died at the scene of the crash. L.C. was later identified as Benally's boyfriend. Both Benally and L.C. were determined to be enrolled members of the Navajo Nation.

On March 5, 2019, a Bureau of Indian Affairs (BIA) agent interviewed J.G. at the hospital. J.G. stated that he had been traveling from California to Albuquerque at the time of the crash. He recalled seeing a vehicle traveling at high speed in his direction. J.G. stated that he slowed down and honked at the oncoming vehicle, then put his hands over his face before the vehicles collided. J.G. stated that he later woke up and was on the ground and did not know what had occurred. J.G. stated that he sustained two fractured ribs on his left side, one of which punctured or damaged his lung, as well as soft tissue injuries and small cuts from flying objects.

On March 8, 2019, a BIA agent interviewed Benally at the hospital. She stated that the only thing she remembered was being at home after returning from a store. Benally estimated that she began drinking that day after lunch time when she was alone. She also recalled that she and L.C. were drinking but was not able to provide the agent with information regarding her pattern of drinking. Benally could not remember what time she left her house and started driving. Nor could she remember speaking with the police after the accident.

*Procedural history*

On October 9, 2019, a federal grand jury returned a two-count indictment against Benally.  Count 1 charged Benally with involuntary manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1153 and 1112.  Count 2 charged Benally with assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).

On February 21, 2020, Benally entered into a written plea agreement with the government.  Under the terms of the agreement, Benally agreed to plead guilty to Count 1 of the indictment, which charged her with involuntary manslaughter in Indian Country.   In exchange, the government agreed, in pertinent part, to dismiss Count 2 of the indictment and to "not bring additional criminal charges against" her "arising out of the facts forming the basis of the" indictment.  ROA, Vol. I at 19.

In support of her agreement to plead to Count 1, Benally admitted the following facts:

> I, Angelita Benally, am an enrolled member of the Navajo Nation Tribe and an Indian, as defined by federal law.  On March 5, 2019, I was driving on Interstate 40 near milemarker [sic] 97, on the Acoma Reservation, which is within the District of New Mexico.  L.C. who is an enrolled member of the Navajo National Tribe was in the passenger seat of the vehicle.  While driving, I crashed my car into another vehicle.  As a result of the crash L.C. was killed.  I learned later that I told the officers who responded to the crash that I had been drinking.  I also later learned that my blood alcohol level was measured .226, within two hours of the crash, and that I had been driving at a speed of approximately 90 mph on Interstate 40 where the posted speed limit is 75 mph.

*Id*. at 15.

The plea agreement included a section entitled "RESTITUTION." *Id*. at 18.

That section stated:

> The parties agree that, as part of the Defendant's sentence, the Court
> will enter an order of restitution pursuant to the Mandatory Victim's
> Restitution Act, 18 U.S.C. § 3663A. The parties agree that, although
> this plea agreement does not result in a conviction for an offense
> described in 18 U.S.C. § 3663A(c)(1), an offense listed in 18 U.S.C.
> § 3663A(c)(1) gave rise to the plea agreement. 18 U.S.C.
> § 3663A(c)(2).

*Id*.

The probation office prepared a presentence investigation report (PSR) and submitted it to the district court and the parties. In a section entitled "Victim Impact," the PSR noted that on March 30, 2020, a probation officer interviewed L.C.'s mother and aunt by telephone. ROA, Vol. II at 16. The probation officer noted that the mother and aunt were "claiming restitution for travel expenses" for two trips for court hearings and one trip to collect L.C.'s belongings from Benally's apartment. In total, they sought restitution "in the amount of $779.70." *Id*. Under this same "Victim Impact" section, the PSR noted that the probation officer interviewed J.G. on April 7, 2020. *Id*. J.G. told the probation officer that "[h]e was not able to work for several months" after the accident and "was supported financially by friends and family while he was unemployed." *Id*. J.G. also told the probation officer that "[h]e received a bill for medical services for $27,000 which he has not been able to pay," and has "not [been] able to get continuing medical care for the injuries he sustained during the accident." *Id*. The PSR noted that J.G. "would like to make a claim for restitution" but was "in the process of getting documentation

6

together and w[ould] provide them to the probation office when they have been compiled." *Id*. at 17. The PSR further noted that the "Court w[ould] be notified by way of addendum once all the documents [we]re received and the restitution amount c[ould] be determined for" J.G. *Id*.

Under a section entitled "SENTENCING OPTIONS," the PSR concluded that, "[b]ased upon a total offense level of 19 and a criminal history category of I, the guideline imprisonment range [wa]s 30 months to 37 months." *Id*. at 24. The PSR also noted that, "[p]ursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case," but that "the total amount of restitution ha[d] not [yet] been determined." *Id*. at 26.

On May 8, 2020, Benally filed objections to the PSR. Benally objected to the restitution amount listed in the PSR for L.C.'s mother traveling to Benally's apartment to collect L.C.'s belongings. Benally also objected to J.G. receiving any amount of restitution because, Benally argued, he was not a victim of the offense of conviction.

On July 1, 2020, the district court held a sentencing hearing for Benally. The district court sentenced Benally to a term of imprisonment of 30 months, to be followed by a three-year term of supervised release. As a condition of supervised release, the district court directed Benally to participate in an outpatient substance abuse program and to submit to substance abuse testing. The district court also ordered Benally to pay restitution to L.C.'s mother, in the amount of $515.20. As for the issue of whether Benally should be ordered to make restitution to J.G., the district

court took that matter under advisement and stated that it would issue a written order addressing the issue.

On July 16, 2020, the district court issued a memorandum opinion and order concluding that J.G. "[wa]s eligible to be a victim under 18 U.S.C. § 3663A for the purpose of restitution." ROA, Vol. I at 58. In arriving at this conclusion, the district court noted that Tenth Circuit case law indicated that "'restitution is limited to losses caused by the conduct underlying the offense of conviction.'" *Id*. at 61 (quoting *United States v. Brewer*, 983 F.2d 181, 184 (10th Cir. 1993)). The district court also noted that, under Tenth Circuit law, it was to "look[] to the facts admitted in the plea agreement" to "determin[e] the conduct underlying the offense of conviction." *Id*. at 62. Applying that analysis to the facts before it, the district court "f[ound] that the same specific conduct that killed L.C.—driving intoxicated or without due care and crashing into J.G.'s car—also injured J.G." *Id*. at 63. The district court therefore "f[ound] that the same underlying conduct of the offense conviction injured both L.C. and J.G." *Id*. In other words, the district court concluded "that the conduct underlying the offense of conviction was the but-for and proximate cause of the harm to J.G." *Id*. at 64. The district court therefore overruled Benally's objections to the paragraphs of the PSR that recommended restitution to J.G.

The district court subsequently held two restitution hearings: the first on September 24, 2020, and the second on October 7, 2020. At the conclusion of the second hearing, the district court issued a written order awarding J.G. $5,424 for the loss of his vehicle and medical expenses in the amount of $4,216. The district court

further ordered that Benally would be permitted "to make [monthly] installment payments on restitution . . . in the amount of $100 or 10% of her wages, whichever [wa]s greater." *Id.*, Vol. I at 118.

Final judgment in the case was entered on October 16, 2020.  Benally filed a timely notice of appeal.

## II

In her opening appellate brief, Benally argued that "the restitution sentence exceeded the district court's authority because" J.G. "was neither a victim of the offense of conviction," as that term is defined in the MVRA, "nor listed in the plea agreement as a person entitled to restitution."  Aplt. Br. at 7.  Benally subsequently filed a supplemental brief and now argues that, in light of the Supreme Court's recent decision in *Borden*, the district court lacked "authority to grant restitution under the MVRA at all," and instead could "only grant restitution in its discretion under the" VWPA.  Aplt. Supp. Br. at 6.  But she asserts that "[u]nder the VWPA, [her] arguments and request for relief remain unaffected."  *Id.* at 9.  Specifically, she argues that "under the VWPA, . . . she was responsible only for losses associated with" the involuntary manslaughter charge that she pleaded guilty to, and she in turn argues that J.G. was not a victim of that offense of conviction.  *Id.* at 9–10. Consequently, she argues that we "must reverse with instructions to vacate the portion of her restitution order that provides compensation for losses sustained by J.G."  *Id.* at 10.  She also argues that even if we agree with the district court that J.G. was a victim of the involuntary manslaughter offense, "a remand is still necessary to

allow the district court to exercise its discretion in ordering restitution and to consider [her] economic circumstances when considering any final restitution amount." *Id.*

*Standard of review*

Because the arguments that Benally now asserts in her supplemental brief were not raised below, we may review them only for plain error.[1] *See Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (holding that if a defendant raises a forfeited claim on appeal, "Rule 52(b)'s plain-error standard applies"). "Rule 52(b) provides: 'A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.'" *Id.* (quoting Fed. R. Crim. P. 52(b)). Under Rule 52(b)'s plain-error standard, "a defendant must satisfy three threshold requirements" in order "[t]o establish eligibility for plain-error relief." *Id.* "*First*, there must be an error." *Id.* (italics in original). "*Second*, the error must be plain." *Id.* (italics in original). "*Third*, the error must affect 'substantial rights,' which generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id.* (italics in original) (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). "If those three requirements are met, an appellate court may grant relief if it concludes that the error

---

[1] The government maintains that the arguments asserted by Benally in her supplemental brief are barred by an appellate waiver provision in the plea agreement. We disagree. Although the plea agreement did include an appellate waiver provision, the district court effectively modified that provision to allow Benally to appeal the district court's order. ROA, Vol. III at 78.

had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks omitted).

A defendant "has the burden of establishing entitlement to relief for plain error." *Id*. (quotation marks omitted). "That means that the defendant has the burden of establishing each of the four requirements for plain-error relief." *Id*. "Satisfying all four prongs of the plain-error test is difficult." *Id*. (quotation marks omitted).

*The MVRA*

The MVRA provides, in pertinent part, that "when sentencing a defendant convicted of" certain designated offenses, "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant shall make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1). The MVRA defines the term "victim" to mean, in pertinent part, "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id*. § 3663A(a)(2).

Among the designated offenses that the MVRA applies to "is . . . a crime of violence, as defined in section 16." *Id*. § 3663A(c)(1)(A)(i); *see* 18 U.S.C. § 16. Of relevance here, the MVRA also applies when a defendant pleads guilty to a non-designated offense but the plea agreement "specifically states that" a designated offense "gave rise to the plea agreement." 18 U.S.C. § 3663A(c)(2).

*The parties' plea agreement*

Benally's offense of conviction, involuntary manslaughter in Indian Country, is not one of the offenses designated in and thus directly subject to the MVRA. *See*

11

18 U.S.C. § 3663A(c)(1) (listing offenses that fall within the scope of the MVRA).

The parties acknowledged this in their plea agreement, but expressly agreed that the

district court should nevertheless, in accordance with 18 U.S.C. § 3663A(c)(2), apply

the MVRA in sentencing Benally.  More specifically, the plea agreement stated,

under the heading "RESTITUTION":

> The parties agree that, as part of the Defendant's sentence, the Court
> will enter an order of restitution pursuant to the Mandatory Victim's
> Restitution Act, 18 U.S.C. § 3663A.  The parties agree that, although
> this plea agreement does not result in a conviction for an offense
> described in 18 U.S.C. § 3663A(c)(1), an offense listed in 18 U.S.C.
> § 3663A(c)(1) gave rise to the plea agreement.  18 U.S.C.
> § 3663A(c)(2).

ROA, Vol. I at 18.

It is undisputed that the parties' reference to "an offense listed in 18 U.S.C.

§ 3663A(c)(1) [that] gave rise to the plea agreement" was intended to refer to Count

2 of the indictment, which, as noted, charged Benally with assault resulting in serious

bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).  It is also undisputed

that, prior to the Supreme Court's issuance of *Borden*, assault resulting in serious

bodily injury was considered in this circuit to be a designated offense under

§ 3663A(c)(1) because we had, in other contexts, classified it as a "crime of

violence."  *See United States v. Mann*, 899 F.3d 898, 900 (10th Cir. 2018).  Thus, at

the time of sentencing (which occurred prior to the issuance of *Borden*), the parties'

plea agreement, in combination with 18 U.S.C. § 3663A(c)(1), effectively obligated

the district court to impose restitution pursuant to the MVRA. [2]

*Borden and its effect on the scope of the MVRA*

In *Borden*, the Supreme Court held that a criminal offense with a *mens rea* of

recklessness does not qualify as a "violent felony" for purposes of the Armed Career

Criminals Act (ACCA).[3]  141 S. Ct. at 1822.  The ACCA defines "violent felony" to

include, in relevant part, "several specific crimes (for example, burglary and arson),"

as well as any offense that "'has as an element the use, attempted use, or threatened

use of physical force against the person of another.'"  *Id*. (quoting 18 U.S.C.

§ 924(e)(2)(B)(i)).

Similar to the ACCA, the federal criminal code's definition of "crime of

violence" includes, in relevant part, "an offense that has as an element the use,

attempted use, or threatened use of physical force against the person or property of

another."  18 U.S.C. § 16(a).  Because the MVRA incorporates the federal criminal

---

[2] Benally argues in her opening appellate brief that she did not "agree to pay any restitution to persons other than L.C. as part of her plea agreement."  Aplt. Br. at 16.  That, however, is a misrepresentation of what the plea agreement actually said.  Nowhere in the plea agreement did the parties discuss which person or persons would be considered victims for purposes of the MVRA.  Instead, the parties agreed to allow the district court to treat the offense of conviction as a qualifying offense under the MVRA and to determine for itself, by applying the language of the MVRA, who was a victim of that offense.  Although Benally and her counsel may have believed that the district court would only treat L.C. as a victim of the offense of conviction, nothing in the plea agreement limited the district court to doing so.

[3] The specific offense at issue in *Borden* was "reckless aggravated assault in violation of Tennessee law."  141 S. Ct. at 1822.

code's definition of "crime of violence," *see* 18 U.S.C. § 3663A(c)(1), the Supreme Court's decision in *Borden* effectively means that the MVRA does not apply to any criminal offense that has a *mens rea* of recklessness.  And because we have held that the offense of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6), can be committed with a *mens rea* of recklessness, *see Mann*, 899 F.3d at 904, that means that offense does not fall within the scope of the MVRA.  In other words, the offense of assault resulting in bodily injury is not an offense that triggers application of the MVRA.

*Plain error analysis*

Having outlined the impact of *Borden* on the MVRA, we now turn to consider whether Benally has established her entitlement to plain-error relief based upon the district court's imposition of restitution under the MVRA.

In light of *Borden* and its impact on the MVRA, it is beyond dispute that the district court erred in ordering Benally to pay restitution under the MVRA.  Benally's offense of conviction— involuntary manslaughter in Indian Country—is not a "crime of violence" and does not otherwise fall within the scope of the MVRA.  The same holds true for the dismissed charge—assault resulting in bodily injury. Consequently, and contrary to the language and intent of the parties' plea agreement, § 3663A(c)(2) was not implicated either.  In other words, notwithstanding the language of the plea agreement, no offense listed in § 3663A(c)(1) "gave rise to the plea agreement."  18 U.S.C. § 3663A(c)(2).

14

The district court's error was also plain. To be sure, the error "was by no means clear at the time of" Benally's sentencing. *Johnson v. United States*, 520 U.S. 461, 467 (1997). But the Supreme Court has made clear that "where the law at the time of" the district court proceedings "was settled and clearly contrary to the law at the time of appeal," then "it is enough that an error be 'plain' at the time of appellate consideration." *Id*. at 468. And that is precisely the situation here. As we have discussed, the parties and the district court, in reliance on Tenth Circuit precedent, concluded that the assault resulting in bodily injury charge was a "crime of violence" that triggered application of the MVRA. In light of *Borden*, however, we now know this was incorrect. As a result, "[t]he second part of the [plain error] test is . . . satisfied." *Id*.

Turning to the third prong of the plain error test, Benally asserts that "[i]n the present, post-*Borden* legal landscape, [she] lacks a qualifying predicate offense for mandatorily-ordered restitution under the MVRA." Aplt. Supp. Br. at 7. Although we agree with this assertion, that does nothing to establish that the district court's error affected her substantial rights. As Benally concedes, the district court possessed discretionary authority to impose restitution under the VWPA. *See* 18 U.S.C. § 3663(a)(1)(A). The VWPA defines the term "victim" in precisely the same manner as the MVRA, 18 U.S.C. § 3663(a)(2), and we have held that the MVRA and the VWPA employ "the same causation standard." *United States v. Anthony*, 942 F.3d 955, 964 n.6 (10th Cir. 2019). Consequently, the district court would have, in

15

determining whether J.G. qualified as a "victim" of the offense of conviction,

employed the same analysis under both the MVRA and the VWPA. *Id*.

Of course, Benally has consistently maintained, both below and on appeal, that

J.G. was not a victim of the offense of conviction.[4]  In her opening appellate brief,

for example, she argues, citing the elements of involuntary manslaughter, that "[t]he

loss associated with an involuntary manslaughter charge relates to a specific harm

(death) of a specific person." Aplt. Br. at 14.  Her position, however, finds no

support in the language of either the MVRA or the VWPA.  Both statutes define the

term "victim" to "mean[] a person directly and proximately harmed as a result of the

commission of an offense for which restitution may be ordered." 18 U.S.C.

§§ 3663(a)(2) and 3663A(a)(2).  Nothing in this statutory language limits such

"harm" to injuries or death that are essential elements of the offense of conviction.

To the contrary, the Supreme Court has held "that the language and structure" of

these acts demonstrated Congress' intent to authorize restitution "for the loss caused

by the specific conduct that is the basis of the offense of conviction." *Hughey v.*

*United States*, 495 U.S. 411, 413 (1990) (addressing VWPA); see *United States v.*

*Mendenhall*, 945 F.3d 1264 (10th Cir. 2019) (applying same rationale to MVRA).

Consistent with that interpretation, we have, for example, held that a manslaughter

---

[4] Because Benally preserved this issue below, and because it is a mixed question of law and fact with a significant legal component, we apply a de novo standard of review in assessing whether the district court erred in concluding that J.G. was a victim of the offense of conviction. *See United States v. Maynard*, 984 F.3d 948, 964 (10th Cir. 2020); *see generally United States v. Barrett*, 985 F.3d 1203, 1221 (10th Cir. 2021).

victim's sons were "directly and proximately harmed as a result of their father's death because they . . . lost, among other things, a source of financial support." *United States v. Checora*, 175 F.3d 782, 795 (10th Cir. 1999) (applying VWPA).

Here, Benally admitted in her written plea agreement that she engaged in the following conduct that gave rise to the offense of conviction:

> I, Angelita Benally, am an enrolled member of the Navajo Nation Tribe and an Indian, as defined by federal law. On March 5, 2019, I was driving on Interstate 40 near milemarker [sic] 97, on the Acoma Reservation, which is within the District of New Mexico. L.C. who is an enrolled member of the Navajo National Tribe was in the passenger seat of the vehicle. While driving, I crashed my car into another vehicle. As a result of the crash L.C. was killed. I learned later that I told the officers who responded to the crash that I had been drinking. I also later learned that my blood alcohol level was measured .226, within two hours of the crash, and that I had been driving at a speed of approximately 90 mph on Interstate 40 where the posted speed limit is 75 mph.

ROA, Vol. II at 15. Although Benally argues that the loss from this conduct is confined to the death of L.C., we reject that argument. Benally's act of crashing her car head-on into J.G.'s car was a singular act that caused both L.C.'s death and the losses that were suffered by J.G., specifically the physical injuries he suffered that necessitated medical care, as well as the damage to his vehicle. In other words, Benally's act of crashing her car head-on into J.G.'s car cannot reasonably be divided into any sub-parts that would have allowed the district court to classify L.C. as the only victim of the offense of conviction.

Benally makes one other argument related to the third prong of the plain error test. She asserts that her "financial circumstances were not considered in the

restitution calculus," and that "[p]reparation for and presentation of evidence at the restitution hearing would have looked considerably different had the VWPA applied below." Aplt. Supp. Br. at 7. This argument is related to the fact that the VWPA, unlike the MVRA, requires a district court, "in determining whether to order restitution," to "consider . . . the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents." 18 U.S.C. § 3663(a)(1)(B)(i)(II).

We are not convinced that this textual difference between the VWPA and the MVRA affects Benally's substantial rights. To begin with, the PSR explored in detail Benally's "offender characteristics," including her educational, vocational and special skills, her employment record, and her financial condition and ability to pay a fine or restitution. ROA, Vol. II at 19–24. Benally does not dispute any of the PSR's factual findings. At the initial sentencing hearing, Benally's counsel provided the district court with an update on Benally's employment status, noting that "[s]he did find work and has been working, although her hours are severely reduced because of the coronavirus." *Id*., Vol. III at 55. Benally's counsel also noted that Benally had "obtained a scholarship for the EKG technician program" at a local university. *Id*. Thus, at the time it ordered Benally to pay restitution, the district court was well aware of her "financial resources," "financial needs," and "earning ability." 18 U.S.C. § 3663(a)(1)(B)(i)(II). Although Benally now asserts that her "[p]reparation for and presentation of evidence at the restitution hearing" would have been different, she offers no details regarding what evidence she could have presented that would

18

have been different from or in addition to what was available to the district court at the time it ordered Benally to pay restitution. Aplt. Supp. Br. at 7.

Further, to the extent that Benally is implying that the district court would not have imposed restitution at all given her financial situation and earning ability, that ignores the fact that Benally effectively agreed in her written plea agreement that the district court would impose some amount of restitution. Finally, although Benally asserts that she did not, in entering into the plea agreement, anticipate that the district court would order her to pay restitution to J.G., that has nothing to do with the textual differences between the MVRA and the VWPA. As we have discussed, both statutes contain the same definition of "victim" and, in turn, both employ the same causation standard. Thus, in sum, we conclude that Benally's substantial rights were not affected by the district court's application of the MVRA rather than the VWPA.

For these reasons, we conclude that Benally has failed to establish her entitlement to plain-error relief based upon the district court's imposition of restitution under the MVRA.

### III

The judgment of the district court is AFFIRMED.